ILLINOIS CENTRAL R. R. CO. ET AL.

v.

JAMES H. WATHEN.

1. GRANT OF LAND FOR RAILROAD AND DEPOT PURPOSES.—Where certain land was granted to railroad companies for "railroad and depot purposes." *Held*, that the fact that the companies permitted, without the payment of rent, the erection and use of elevators, corn cribs, lumber yards and lime houses on the ground in question, which facilitated the business of the companies in the receipt, transportation and discharge of freight, was not such a violation of the terms of the grant as would warrant the court in restraining the further use for such purposes, and compel the parties to respond in damages.

2. ESTOPPEL.—Appellee by his grant is estopped from claiming that the use is not within his grant, since the use to which it is now applied is the same that it was when the grant was made.

APPEAL from the Circuit Court of Woodford county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed December 4, 1885.

This is a bill in chancery, alleging that the complainant, on the 28th February, 1879, was the owner in fee of a parcel of land in controversy being the Y made of the junction of the lines of the two railroads and the track connecting them, except the right of way of the two railroads passing through it. That on that day, he and one Gibson conveyed the same to the Illinois Central Railroad Co. and to A. L. Hopkins, receiver of the Toledo, Peoria and Warsaw Railway Co. That the Wabash, St. Louis and Pacific Railway Co. is now in possession of part of the said property under a lease from the Toledo, Peoria and Western, the successor of the Toledo, Peoria and Warsaw and the Illinois Central Railroad Companies, the remainder.

The deed of February 28th referred to, is an absolute conveyance, except that it contains a clause for "depot grounds and railroad uses only."

It is claimed that the railroad companies have violated this

clause of the deed and permitted the ground to be used for storing, keeping and selling lumber for private uses by individuals, and for a lumber office in connection with such lumber yard, and as a place to keep and sell tiling, cement, building materials, and other heavy articles, and have allowed unsightly corn cribs and places for storing corn in the ear to be maintained thereon by private individuals for private use and gain, and also a warehouse and elevator for the storage of grain and other articles of mercantile traffic. That the companies refuse to interfere and prevent such use. That the railroad companies either have, or by proper diligence could have, received large rents, etc. Plaintiff prays an account and an injunction restraining any such further uses of the premises.

The answers deny that complainant was owner in fee of the premises on the 28th of February, 1879, and say that prior to that time, on September 1, 1856, the complainant and one Gibson executed their deed of conveyance to respondent, I. C. R. R. and the Peoria and Oquawka Railroad Company and to their successors. That the companies immediately entered into possession of the land and have ever since had the continuous and undisputed possession of it, paid all taxes, etc. They admit the execution of the deed to the I. C. R. R. Co. and Hopkins, as receiver of the T., P. & W., by complainant and Gibson, and claim they have not violated its terms. That such erections and buildings as they have allowed to be maintained upon that portion of the " Y," not immediately required for other purposes, are proper and necessary conveniences in accomplishing the objects of the railroads and their *business interests*. That the public in general are greatly benefited. That private parties owning corn and other produce which they desire to ship on respondent's cars from the different stations, derive a great benefit in being permitted, at their own expense, and without paying rent or other compensation, to have the privilege of storing it temporarily along its line. This is more especially so in this part of the country, where at certain parts of the year the roads and highways are almost impassable, and the farmers necessarily divide their work to suit the season, and so many do their hauling when the roads

are good, and wait for their prices. These principles hold good in all the other matters complained of. The elevators must be contiguous to the tracks for loading and unloading, and so it is with the lumber and heavy articles shipped over the road.

That the companies charge no rent for any of these privileges, nor do they intend to, but only permit such temporary uses of the ground for the benefit of the public and to facilitate their own interests as common carriers.

That the plaintiff is not engaged in any business the profitable use of which has been diminished or interfered with in any respect. That he lived near by and saw these buildings erected and the uses to which the land was being put for many years, without any objections.

That there was no favoritism or discrimination shown these men, and that there is room enough on these grounds and other places on the right of way for all such business as the town affords.

The other defendants are the persons who use the buildings and carry on the business, and answer substantially as the railroad companies.

The decree finds that the railroad companies have, in violation of the terms and uses of the conveyance of February 28, 1879, and against the consent of the complainant, used and permitted the premises to be used as a lumber yard for private uses, and also for corn cribs, and used the same for storing corn in the car and for shelling the same upon the premises, and grain scales in connection therewith, for private gain, and a warehouse and elevator for the storage of grain and other articles, and that the railroad companies refuse to prevent such use, but permit it under the lease. The court finds that no rent was reserved in the leases, and that neither of the railroad companies has ever received rents on account of the use of the land, etc.

The court then finds that neither of the railroad companies is liable to account to the complainant touching the rents and profits mentioned in the bill, and that the question as to the right of the complainant to call upon defendants, Elder, Mc-

Clellan and Metzger, for an account of rents and profits touch-ing the real estate, is not, in the judgment of the court, in-cluded in this case, but they are remitted to such remedies and proceedings touching the same between them respectively as may be according to law and equity.

It then strictly enjoins all the defendants from using or permitting to be used, the land for lumber yards, offices, sheds, storehouses, building materials or warehouses, or elevator for storing.

M. F. T. HUGHES, Mr. W. S. GILSON and Messrs. WILLIAMS & CAPEN, for appellants; that there has been no violation of the conditions of the deed, cited Hamilton v. A. & E. R. R. Co., 1 Md. 568; Morawetz on Private Corporations, §§ 189, 192; C., B. & Q. R. R. Co. v. Wilson, 17 Ill. 123; Armstrong v. Penn. R. R. Co., 9 Vroom (N. J.), 1; Simpson v. West M. P. H., 2 DeGex, Fisher & Jones, 141; Pierce on Railways, 506; Grand Trunk R. R. Co. v. Richardson, 91 U. S. 454; Hill v. W. V. R. R. Co., 32 Vt. 68; Low v. G. & C. U. R. R. Co., 18 Ill. 324; S. C. R. R. Co. v. Dix, 109 Ill. 237; Smith v. C. & W. I. R. R. Co., 105 Ill. 511; Fisher v. C. & S. R. R. Co., 104 Ill. 323; In re N. Y. C. & H. R. R. R. Co. v. M. G. & L. E., 63 N. Y. 326; Giesy v. C. W. & Z. R. R. Co., 4 Ohio St. 308; O. C. R. R. Co. v. Evans, 6 Gray, 25; Worcester v. W. R. R Co., 4 Metcalf, 564; In re N. Y. C. & H. R. R. R. Co., 77 N. Y. 248; Wardens v. S. E. Ry. Co., 9 Hare, 489; Crawford v. Longstreet, 43 N. J. L., 325; Simpson v. Westminster Pol. Hotel, 2 D. G. F. & J., 141; In re B. & A. R. R. Co., 53 N. Y. 574; C. & P. R. R. Co. v. Speer, 56 Pa. St. 325; P. P. & C. I. R. R. Co. v. Williamson, 91 N. Y. 552.

Messrs. SHAW & EDWARDS and Mr. W. G. RANDALL, for ap-pellee; cited Proprietors of Locks and Canals v. N. & L. R. R. Co., 104 Mass. 1; Eldridge v. Smith, 34 Vt. 484; N. Y. & H. R. R. Co. v. Kip, 46 N. Y. 546; R. & S. R. R. Co. v. Davis, 43 N. Y. 137.

WELCH, J. In the view we take of this case we shall con-

fine our examination to the third and fourth assignments of error. Has the condition of the grant been violated?

Conceding that appellant's title depends on the meaning of the phrase "railroads and depot purposes," the real controversy is whether the company in permitting, without the payment of rent, the erection and use of elevators, corn cribs, lumber yards and lime houses, on the ground in question, is such a violation of the terms of the grant as will warrant the court in restraining the further use for such purposes and compel appellants to respond in damages.

A railroad purpose for which a railroad company holds land is such as may be necessary for the construction and maintenance of its railroads and stations, depots and other accommodations, necessary to accomplish the object for which the corporation is created. Justice Caton in C., B. & Q. R. R. Co. v. Wilson, 17 Ill. 126, in defining what a railroad company has power to do in acquiring and using land, quotes the statute then in force as follows: "To purchase and by grants and voluntary donations receive, and by its officers, engineers, surveyors and agents enter upon, take possession of and hold and use all such lands and real estate and other property as may be necessary for the construction and maintenance of its railroads and stations, depots and other accommodations, necessary to accomplish the object for which the corporation is created." Under the statute he holds that a workshop is included, and in Law v. Galena & Chicago Union Railroad Co., 18 Ill. 325, it is held that a paint shop is included by the terms of the same statute. Chapter 114, Rev. Stat. 1874, section 20, subsection 3, provides that such corporation shall have power "to purchase, hold and use all such real estate and other property as may be necessary for the construction and use of its railway, and the stations and other accommodations necessary to accomplish the objects of its incorporation, and to convey the same when no longer required for the use of such railway. And subsection 8 provides that they shall have power "to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery, for the construction, accommodation and use of passengers, freights and business interests,

or which may be necessary for the construction or operation of said railway." Section 80 of the same chapter provides, among other things, that railroads shall receive grain in bulk, and load the same either upon its track at its depot, or at any warehouse adjoining its track or side-track when demanded.

" Whether or not a particular act be authorized is often a question requiring nice discrimination. A transaction may *prima facie* appear to be wholly foreign to the business for which a corporation was formed, and yet if it be auxiliary to any legitimate purpose of the company and adapted to carry out the same more advantageously, is impliedly authorized." Morawitz on Private Corporations, section 190. In the case of the Grand Trunk R. R. v. Richardson, 91 U. S. 454, Richardson had erected and used a saw-mill on the right of way of the railroad company, which was destroyed by fire started by a locomotive, and this was an action by the owner of the saw-mill against the railroad company to recover for the value of the mill so destroyed, and it became a material question whether the mill was rightly there or not. Justice Strong says, "If the buildings of the plaintiff were rightfully where they were, if there was no trespass on the roadway of the company, it was clearly pertinent to be shown. And while it must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway, and is not at liberty to alienate any of it so as to interfere with the full exercise of the franchise granted, we are not prepared to assert that it may not license the erection of buildings for its convenience even though they may also be for the convenience of others. It is not doubted that the defendant might have erected similar structures on the ground on which the plaintiff's buildings were placed, if in its judgment the structures were convenient for the receipt and delivery of freight on its road. Such erection would not have been inconsistent with the purpose for which its charter was granted, and if the company might have put up the buildings, why might it not license others to do the same thing for the same object, namely the increase of its facilities for the receipt and delivery of

freight.   The public is not injured and it has no right to com-
plain, so long as a free. and safe passage is left for the carriage
of freight and passengers." The rule deducible from this
opinion is, that if the.company, to facilitate its business, could
have erected similar structures, it could license others to do
the same thing for similar purposes.   Justice Ranney, in Gessy
v. C. W. & Z. R. R. Co., 4 Ohio St. 327: "Indeed, without
the use of grounds upon which to receive and discharge freight
and passengers the track would be useless, and if the proceed-
ing could only be referred to that provision of the constitution
which specially regulates the appropriation for right of way,
there could be very little doubt that such indispensable append-
ages would be covered by its terms." "Convenience and conse-
quent cheapness of transportation are in most cases essential
and in many vital to their maintenance."   Green, J., in Getz'
Appeal, Am. & Eng. R. R., Vol. 3, page 193.

The  principal use to which the.right of way is put in small
towns and villages is to furnish places for warehouses and
storage for commodities, carried or to be carried by the road,
and these warehouses and places of storage are used by private
parties for private gain.   But at the same time the use is a
public use, a railroad use, because it greatly facilitates and ac-
commodates the carrying out of the objects of the corporation,
and is in fact necessary to a proper carrying out of these ob-
jects.   In N. Y. C. & H. R. R. R. v. M. G. & S. E., 63 N. Y.
326, Justice Miller says:  "It is claimed that the design of
the proposed acquisition is also for collateral enterprises, and
among others, for the benefit of the stock yards, elevators, and
to meet the requirements of this class of business to be carried
on in connection therewith by other persons outside of the
company.   This evidently is not the purpose of the applica-
tion.   All of these may follow as a consequence; and some, if
not all of them, may be very properly connected with the
business of a great railroad corporation."   In this case there
is no claim that this occupancy in any way interferes with the
convenience of the public, or was any damage to the com-
plainant or any prejudice to the railroad companies in the dis-
charge of their duties to the public.   Complainant's sole claim

is that under this clause in the deed he ought to recover from these occupants the rental value of the ground, and that the railroad companies ought to be enjoined from permitting such occupancy without his consent. The evidence discloses that this occupancy facilitates the business of the railroad companies, that it is necessary and is the universal practice in the western States to permit such use of their right of way at stations. The lumber and grain business constitutes a very large part of the business of all the railroads in this country, and without these facilities for receiving, storing and discharging the same, the transportation of such articles by rail would be greatly impeded if not wholly destroyed. The evidence further shows that the railroad companies have received no rent and that these buildings were erected and used for the purposes for which they are now used, prior to the deed of appellee made in 1879, and were so used at the time of his making his deed, that he saw the buildings as they were being erected. It is claimed by appellee that the case of Proprietors of Locks and Canals v. Nashua & Lowell R. R. Co., 104 Mass. 1, is decisive of this case. In that case the defendants had converted certain buildings from their original design into private stores or shops, and they were occupied for the general purposes of trade and mechanical and manufacturing business by lessees, having no other connection with the operations or interests of the corporation than as its tenants paying rent. Such occupation and use placed them beyond the scope of the corporate purposes and functions. The occupancy by the lessees in the case at bar is to facilitate the business of the railroad companies, to furnish needed and necessary accommodations for the receipt, storage and discharge of freight, and is without rent.

It is clear that under the statute of this State, chapter 114, section 18, subsection 3 of section 20, that railroads have the power to acquire and hold real estate to the extent that may be required for the purposes of its incorporation, the transaction of its business, or for its depots, stations, buildings, machine and repair shops, or for right of way, or other accommodations necessary to accomplish the object of its incorpora-

tion. And by subsection 8 of section 20, same chapter, the right of way is given .to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery for the construction, accommodation and use of passengers, freights and business interests, and which may be necessary for the construction or operation of said railway. Under the statute of 1849, which was not as broad in its term as this statute, it was held that repair and paint shops were included; they were held to be embraced in the term, "other accommodations necessary to accomplish the object of its incorporation," used in that statute. One of the leading branches of the business of railroads is that of carrying freight. In order that it may carry on this business with facility and dispatch, it is necessary to have suitable grounds and buildings for the receipt and deposit of freight to be transported and for the discharge of freight received. All such grounds and buildings are clearly within the power given. And under the authorities above referred to of Morawetz on Private Corporations, 4th Ohio Stat. 63 N. Y. and 91 U. S., the ground and buildings that were used by the lessees in this case were necessary to enable these railroad companies to carry on their business as carriers of freight with dispatch and convenience. If the ground and buildings had been used by the railroad companies themselves, in the same way and for the same purposes that they have been used by the lessees, their right to so use them would not and could not have been questioned. Does the fact that such right is permitted by the railroad companies to the lessees without rent affect the question? Under the authority in 91 U. S. *supra*, whatever could be done by the railroad companies under their powers to facilitate their business could be permitted to be done by their license to others. The evidence in this case clearly establishes that the use to which the ground and buildings has been put is to facilitate the business of these railroad companies in the receipt, transportation and discharge of freights.

We hold that such use does not violate the terms of appellee's grant. We hold, further, that appellee by his grant is estopped from claiming that the use is not within his grant, the

use to which it is now applied being the same that it was when the grant was made. We are of the opinion that the court erred in granting the injunction and in not dismissing the bill.

For the errors herein indicated this cause is reversed and remanded with directions to dissolve the injunction and dismiss the bill.

Reversed and remanded with directions.