ADELINE GURNEY and Another v. MINNEAPOLIS UNION ELEVATOR
COMPANY.[1]

December 2, 1895.

Nos. 9508—(85).

**Railroad Companies—Condemnation—Fee.**

> Scott v. St. Paul & C. R. Co., 21 Minn. 322, followed, as to the effect of a
> provision in the charter of a railway company authorizing it to take an "abso-
> lute fee" in lands condemned for public purposes.

**Same—Misuser—Abandonment.**

> The erection and operation of a public elevator and warehouse upon land
> acquired by a railway company by condemnation for public purposes, either
> by itself or its lessee, are neither a misuser nor an abandonment of its ease-
> ment in the land occupied by such structure, and the owner in fee cannot
> maintain ejectment for the land so occupied.

Appeal by plaintiffs from an order of the district court for Hen-
nepin county, Belden, J., overruling a demurrer to the answer. Af-
firmed.

*Louis A. Reed*, for appellants.

*Koon, Whelan & Bennett* and *W. E. Dodge*, for respondent.

START, C. J.    Action of ejectment to recover the possession of
the premises described in the complaint, and the rents and profits
thereof.    The answer put in issue the allegations of the complaint,
and, for a second or further defense, alleged title in fee to the prem-
ises to be in the St. Paul, Minneapolis & Manitoba Railway Com-
pany, under which it claimed right of possession, as licensee.    To
this second defense the plaintiffs demurred, and from an order over-
ruling the demurrer they appealed.

The material facts alleged in the answer and admitted by the
demurrer are substantially as follows:    The land in question is
a part of a strip 220 feet in width, adjacent to the right of way
of the railway company, and the whole of the strip was acquired
by it by the judgment of the district court of the county of Hennepin,
in proceedings instituted by it under its charter and the laws of

[1] Reported in 65 N. W. 136.

the state, and pursuant to the provisions of Laws 1857 (Ex. Sess.), c. 1, and subsequent acts amendatory thereof. The condemnation proceedings were duly instituted and carried on, and the value of the land taken thereby was assessed and adjudged to be the sum of $17,075.82. Henry S. Gurney was at this time the owner of the land taken, and judgment was duly rendered in the condemnation proceedings by the court in his favor, and against the railway company, for such sum for the value of the land, and it was therein further adjudged that, upon the payment of such judgment, an absolute estate in feè simple to the land so taken and condemned should vest in the railway company; the railway company paid the judgment, the amount thereof was accepted by Gurney, and thereupon the company took possession of the land, and has ever since occupied and used it for railroad purposes. The answer further alleges that, after the railway company had so acquired the land, "it licensed and permitted this defendant to erect and construct upon said land, for the uses and purposes of said railway company, and in connection with, and as a necessary adjunct of, the business of said railway company, a public grain elevator and warehouse, with the necessary power house, engines, annexes, railway tracks, and other appurtenances useful and necessary in connection therewith, which grain elevator, warehouse, and appurtenances were erected upon, and occupy, substantially, that portion of said land described in plaintiffs' complaint herein; that defendant entered upon said land, and erected said elevator and warehouse thereon, and still occupies the same, under and by virtue of the license so granted to it, * * * and not otherwise; that, relying upon the title of said St. Paul, Minneapolis & Manitoba Railway Company in and to said land, and believing the same to be perfect, it in good faith erected said elevator, warehouse, and elevator plant, as aforesaid; that this defendant never had any notice or knowledge, in any manner, of any defect in the title of said railway company to said land, and that the plaintiffs in this action, and those through or from whom they claim, well knew of the occupation being made, and the possession of said land being taken, by said defendant, and that the plaintiffs, nor either of them, nor any of those through or from whom they claim, made any objection thereto, legally or otherwise. That defendant in good faith

actually expended and paid, in the construction and erection of said elevator, warehouse, and improvements, as aforesaid, the sum of three hundred twenty-two thousand one hundred ninety-two and $^{74}/_{100}$ dollars ($322,192.74), and that this defendant is now the owner of said elevator, warehouse, and appurtenances, as aforesaid, and is in possession, occupancy, and operation of the same, as a public grain elevator and warehouse, and has been since the erection thereof."

The law [2] under which the condemnation proceedings were had gave the railway company the right to condemn lands for "the purpose of constructing bridges, dams, embankments, excavations, spoilbanks, turnouts, engine houses, shops, and other buildings necessary for the constructing, completing, altering, maintaining, preserving and complete operation of said railroads. * * *" It also provided: [3] "An absolute estate in fee simple in such lands shall be and become vested in the said company, as against all persons so receiving notice from the said commissioners as aforesaid, and all such persons as having received such notice, shall be forever concluded from questioning such title so acquired by the said company."

1. The defendant asserts and the plaintiffs controvert the proposition that, under its charter rights, the railway company had the power to, and did, acquire a fee-simple title, and not a mere easement in the lands condemned. Laws 1857 (Ex. Sess.) c. 1, subc. 1, § 13. And the judgment in the condemnation proceedings, in terms, gives the railway company title in fee absolute to the land taken. But the plaintiffs urge that section 13 is unconstitutional. In the view we take of this case, it is unnecessary to consider or decide this question, or the effect of the judgment, for, in any event, the railway company acquired, by the condemnation proceedings and judgment therein, a perpetual easement in the land for all the public purposes for which it was authorized to take lands by the exercise of the power of eminent domain. Scott v. St. Paul & C. R. Co., 21 Minn. 322.

2. The railway company having acquired such easement in the land, the plaintiffs, even if it be conceded that they are the owners

[2] Laws 1857 (Ex. Sess.) c. 1, subc. 1, § 3.          [3] Id. § 13.

of the fee, cannot maintain ejectment for the premises, unless the company has abandoned the easement. The answer, then, states a defense, unless the act of the railway company, in licensing the defendant to erect and operate upon the land, for the uses of the railway company, and as a necessary adjunct of its business, "a public grain elevator and warehouse," constitutes in law an abandonment of its easement in the land.

This case might be properly disposed of upon the ground that the mere use of an easement for a purpose not authorized, or a temporary disuse thereof, is not, of itself, sufficient to constitute an abandonment; and, therefore, the defendant being a mere licensee of the railway company, the latter has not abandoned its easement in the premises by reason of such license to the defendant. Roby v. New York C. & H. R. R. Co., 142 N. Y. 176, 36 N. E. 1053; Peirce v. Boston & L. Ry. Co., 141 Mass. 481, 6 N. E. 96. But, in view of the importance of this case, we place our decision upon the broad ground that the erection and operation of a public grain elevator or warehouse upon land acquired by a railway corporation in condemnation proceedings, either by the company, or its licensee or lessee, are neither a misuse nor an abandonment of its easement in the land occupied by such elevator or warehouse.

Courts will, as a rule, take notice of whatever ought to be generally known within the limits of their jurisdiction, and we may well take judicial notice of the fact that the handling and transportation of grain constitute a very important part of the business of the railways of the state, and that grain elevators and warehouses are reasonably necessary, if not absolutely essential, to the feasible, prompt, and economical handling, storing, and transporting of grain by railroads. The erection and operation of grain elevators and warehouses upon the right of. way of railroads, with side tracks thereto, are a matter of such general and public interest that the law has made provisions for the acquiring of the right to locate and operate them upon the right of way of railway companies without their consent. G. S. 1894, §§ 7724-7729.

The defendant's licensor, the railway company, was expressly authorized by its charter to condemn lands for the purpose, among others, of constructing and maintaining all buildings necessary for the complete operation of its railroads. That elevators are reasonably,

if not absolutely, necessary for the complete operation of a railway in this state is a fact so obvious that it may be safely assumed without argument.  How could a single railway system of our state handle and transport 60,000,000, or any less number of millions, of bushels of grain each year without the use of elevators along its right of way?  It cannot be doubted that the railroad company has the right to erect and maintain on its right of way, as against the objection of the owner of the fee, elevators and warehouses to facilitate the handling and transporting of grain by it; and, if the company may do this, why may it not license others to do this work for it?

There is no reason or consideration of public policy that forbids it.  On the contrary, by the terms of the statute we have quoted, a railway company may be compelled to permit elevators and warehouses to be erected and operated on its right of way by private parties.  How, then, can it be claimed that they may not voluntarily license the erection and operation, on land condemned by it for public purposes, of what is described in the answer demurred to as a public grain elevator and warehouse, for the uses and purposes of the railway company, in connection with, and as a necessary adjunct of, its business.  Grand Trunk R. Co. v. Richardson, 91 U. S. 454; Illinois C. R. Co. v. Wathen, 17 Ill. App. 582.  The use which the railway company permits the defendant in this case to make of a portion of the land condemned by it is a use not inconsistent with the public purposes for which the land was acquired, but, on the contrary, it is a use directly in aid of such purposes; therefore, the railway company has neither misused nor abandoned any portion of the land so acquired by it by the act complained of.

Order affirmed.