Argued 20 February; decided 23 April, 1900.

**ABRAHAM *v.* OREGON & CALIFORNIA R. R. CO.**

[60 Pac. 899, —— L. R. A. ——, 12 Am. & Eng. R. R. Cas. (N. S.) 250.]

PAROL EVIDENCE TO EXPLAIN COMMON WORDS.

1. Where a deed to a railroad company conveyed land "for all legitimate railroad, depot, and warehouse purposes," parol evidence of the understanding of the parties at the time the instrument was executed is not admissible to show that the words "legitimate railroad purposes" were used with a particular or special meaning. Being ordinary and usual words, no peculiar signification can be attached to them by parol evidence.

RAILROAD PURPOSES*—HOTEL AND EATING HOUSE.

2. A railroad company may under some circumstances conduct hotels or eating houses in connection with and as a necessary part of its railroad business, and their maintenance would be a legitimate railroad purpose; but whether a certain hotel or eating house is maintained for such purpose is a mixed question of law and fact that ordinarily requires testimony for its determination.

| | |
|---|---|
| 37 | 495 |
| 37 | 512 |
| 37 | 495 |
| 41 | 551 |
| 41 | 552 |

From Douglas:   J. W. HAMILTON, Judge.

Suit by Sol Abraham against the Oregon & California Railroad Co. and others to enjoin maintenance of a hotel and diversion of water, and for damages.   The first cause of suit, in substance, is that on the twenty-eighth of February, 1883, the plaintiff and W. R. Willis conveyed to the defendant, the Oregon & California Railroad Co., certain premises described in the complaint, by an ordinary warranty deed, the *habendum* clause of which is as follows:   "To have and to hold the same, with all the privileges and appurtenances thereto belonging, to the said railroad company, its successors and assigns, forever, for the purpose of building and maintaining a railroad thereon, and to use the same for all legitimate railroad, depot, and warehouse purposes."   At the time of the execution of the deed the plaintiff and Willis were the owners of a large tract of land at what is now known as "Glendale," in Douglas County, and adjoining the

---

*NOTE.—This case has been republished in 12 Am. & Eng. R. R. Cas. (N. S.) 250, with a note on the power of railroad companies to acquire land for railroad purposes, and what are and what are not such purposes.—REPORTER.

land conveyed to the railroad company, which they subsequently laid off and platted as a town ; and soon thereafter the plaintiff, who, in the mean time, had succeeded to Willis' interest, constructed and built thereon a hotel adequate to the wants and conveniences of the passengers of the defendant company, the traveling public and the local custom. Thereafter, and on or about the first of July, 1887, the Oregon & California Railroad Co. leased to the defendant, the Southern Pacific Co., all its railroad and railroad properties in the State of Oregon, including the depot grounds at Glendale, and on or about the first of August, 1887, the Southern Pacific Co. leased to the defendant Clarke a portion of the land conveyed to the Oregon & California Railroad Co. by the deed of February 28, 1883, "and has caused, procured and suffered said defendant Clarke to erect thereon a hotel for the accommodation of the general public, and incidentally as an eating house for the passengers upon the trains of the Southern Pacific Co., and the said defendant Clarke is now, and ever since to the first day of October, 1897, has been carrying on and conducting upon the said leased premises a hotel for the accommodation of the traveling public and local custom ; the said Southern Pacific Co. having caused, procured and suffered a hotel building to be erected and maintained upon said leased premises for that purpose ; that the principal business of said hotel and eating house so erected and maintained is the local custom and patronage of an ordinary and general hotel incident to the town of Glendale ; that it derives some support from the passengers of the Southern Pacific Co., but said support is not its principal business ; that the trains of said Southern Pacific Co. do not stop at said station of Glendale regularly for meals, and have never done so since the erection of said hotel, and but rarely stop for meals, and then only when its trains

are at least one and one-half hours late ; that the said Southern Pacific Co. has a regular eating station and eating house at Ashland, Oregon, sufficient to accommodate its passengers, and it is not necessary, and does not add to the convenience of its passengers, to have one at Glendale ; that, by reason of the construction and operation of said hotel and eating house upon said depot grounds by the defendant, as hereinbefore set out, the hotel of plaintiff is rendered practically valueless for the purposes for which it was constructed.'' It is averred that at the time of the execution of the deed to the railroad company it was expressly understood and agreed by and between the parties thereto that the words ''legitimate railroad, depot, and warehouse purposes,'' as used therein, should not mean or indicate a hotel or eating house, and such deed was made and accepted with the understanding that the premises conveyed should be limited in their uses, and were not granted for the purpose of building or maintaining either an eating house or hotel thereon ; that the defendants, the Southern Pacific Co. and Clarke, had full notice and knowledge of the claim of plaintiff relative thereto at the time the lease was made, and the hotel or boarding house constructed.

For a further and separate cause of suit the complaint alleges, in substance, that on or about the second day of May, 1883, the legal title to certain lands near the depot grounds referred to was in Willis, although plaintiff was the owner of an undivided half thereof ; that, at the date referred to, Willis and his wife, by an instrument in writing, conveyed to the Oregon & California Railroad Co. the right to take from a certain stream on the premises owned by the plaintiff and Willis all the water that would flow through a three-inch pipe from a certain designated point to the water tank of the railroad company, in con-

37 Or.—32.

sideration of which the company granted to Willis and his assigns the right to tap the tank by a pipe three inches in diameter, and to thereby take all the water therefrom, beyond the amount needed by the defendant corporation to supply its locomotives; that on or about the eighth of May, 1885, the plaintiff purchased and succeeded to all the rights of Willis in and to the premises referred to, and all his rights under such agreement; that on or about the first of November, 1897, the defendants, the Southern Pacific Co. and Clarke, caused a pipe to be laid and connected with the water tank referred to, and thereby conducted the water to the hotel built upon the depot grounds, and ever since such time have been, and now are, using the water from said tank, to plaintiff's damage in the sum of $250. The complaint concludes with a prayer for a decree enjoining and restraining defendants from carrying on or permitting to be carried on the eating house or hotel referred to, and from using from the water tank described any other or greater amount of water than necessary to supply the locomotives of the defendant railroad company. A demurrer to the complaint was sustained and plaintiff appealed.

REVERSED.

For appellant there was a brief over the names of *Dolph, Mallory & Simon, Albert Abraham,* and *J. C. Fullerton,* with an oral argument by *Messrs. Abraham* and *Fullerton.*

For respondents there was a brief over the names of *Fenton, Bronaugh & Muir* and *Willis & Rice,* with an oral argument by *Mr. William T. Muir.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

This is not a suit to correct or reform a deed, and hence there are but two questions for decision on this appeal—first, whether, under the allegation that, at the time the deed was made by the plaintiff and Willis to the Oregon & California Railroad Co., it was understood and agreed that the words "for all legitimate railroad, depot, and warehouse purposes" should not mean or include a hotel or eating house, plaintiff is entitled to an injunction restraining the defendants from maintaining a hotel on the premises conveyed, because in violation of the terms of the grant; and, second, if not, whether the hotel constructed and now maintained by the defendants the Southern Pacific Co. and Clarke is for "legitimate railroad purposes." Considerable discussion was had at the argument as to whether the deed in question conveyed to the railroad company the fee of the land therein described, or a mere easement therein. But, for the purposes of this appeal, that question is immaterial. In any event, the grant was for legitimate railroad, depot, and warehouse purposes only : *Breckinridge* v. *Delaware, etc. R. R. Co.* (N. J. ch.) 33 Atl. 800 ; *Robinson* v. *Missisquoi R. R. Co.* 59 Vt. 426 (10 Atl. 522) ; *Thornton* v. *Trammell,* 39 Ga. 202.

1.   We come, then, directly to a consideration of the question as to whether parol evidence is admissible to show that the words "legitimate railroad purposes" were used in the deed in a particular sense.*   It is an

---

\* NOTE.—Section 692 of Hill's Ann. Laws, reads as follows: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the

elementary rule of law that parol evidence cannot be admitted to contradict or vary a written instrument; and it is equally well settled that parol evidence may not be given to show that common words, the meaning of which is plain, and which do not appear from the context to have been used in a peculiar sense, were in fact so used. Mr. Greenleaf, after stating the rule that parol evidence is always receivable to define and explain the meaning of words in a contract which are purely technical or local, or which have two meanings — the one common and universal, and the other technical or local—or where words and phrases are used in a peculiar sense by members of a particular religious sect, says: "But beyond this the principle does not extend. If, therefore, a contract is made in ordinary and popular language, to which no local or technical and peculiar meaning is attached, parol evidence, it seems, is not admissible to show that in that particular case the words were used in any other than their ordinary and popular sense :" 1 Greenleaf, Ev. (15 ed.) § 295.

And Lord Chief Justice TINDALL says: "The general rule I take to be that where the words of any written instrument are free from ambiguity in themselves, and where external circumstances do not create any doubt or difficulty as to the proper application of those words to claimants under the instrument, or the subject-matter to which the instrument relates, such instrument is always to be construed according to the strict, plain, common meaning of the words themselves, and that in such case evidence *dehors* the instrument, for the purpose of explaining it according to the surmised or alleged intention

pleadings; (2) where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates as defined in section 696, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud." * * *

REPORTER.

of the parties to the instrument, is utterly inadmissible. If it were otherwise, no lawyer would be safe in advising upon the construction of a written instrument, nor any party in taking under it; for the ablest advice might be controlled, and the clearest title undermined, if at some future period parol evidence of the particular meaning which the party affixed to his words, or of his secret intention in making the instrument, or of the objects he meant to take benefit under it, might be set up to contradict or vary the plain language of the instrument itself:'' *Shore* v. *Wilson*, 9 Clark & F. *355, *565. And Mr. Justice CLIFFORD, in *Moran* v. *Prather*, 90 U. S. (23 Wall.) 492, 501, 23 L. Ed. 123, speaking in reference to the same subject, says: ''Ambiguous words or phrases may be reasonably construed to affect the intention of the parties, but the province of construction, except when technical terms are employed, can never extend beyond the language employed, the subject-matter, and the surrounding circumstances.'' It is, therefore, not competent for either of the parties to a contract, where its language is plain and unambiguous, to prove by parol evidence how it was understood, or the meaning of the words used: 1 Rice, Ev. 250; *Kemble* v. *Lull*, 3 McLean, 272 (Fed. Cas. No. 7683); *Davis* v. *Shafer* (C. C.), 50 Fed. 764. Applying this rule to the case in hand, it is clear that the plaintiff cannot show by parol testimony that the deed from himself and Willis to the railroad company was not intended to, and did not, convey to such company the right to use the property for all legitimate railroad purposes.

2. It is claimed, however, on behalf of the plaintiff, that the hotel is not a legitimate or proper railroad purpose, because it is used for the accommodation of the general public, and not for the passengers and employees of the railroad company. The erection and maintenance

by railway companies of hotels or eating stations at suitable and convenient places along their roads for the use and accommodation of their employees and passengers is not only a legitimate and proper railroad use, but almost, if not quite, a necessity, in many instances, of modern railway travel. A railway company has an undoubted right to use its property in any way the exigencies of its business or the convenience or accommodation of its passengers may require or suggest: *Gudger* v. *Richmond, etc. Ry. Co.* 106 N. C. 481 (43 Am. & Eng. R. R. Cas. 606, 11 S. E. 515) ; *Western Union Tel. Co.* v. *Rich*, 19 Kan. 517 (27 Am. Rep. 159) ; *Gurney* v. *Minneapolis, etc. Elev. Co.* 63 Minn. 70 (30 L. R. A. 534, 65 N. W. 136) ; *Illinois, etc. R. R. Co.* v. *Wathen*, 17 Ill. App. 582. And, in cases where hotels or eating houses appear to be reasonably necessary for the convenience of its employees and passengers, their maintenance is a legitimate railroad purpose. But an eating house or hotel kept for the accommodation of the general public, and not as an incident to the operation and management of the railway, cannot be so considered. As to whether a given hotel or eating house is maintained for railroad purposes is therefore largely a mixed question of law and fact, to be determined from the circumstances of each particular case. The question as to when and under what circumstances a hotel is a necessary or legitimate railroad use or purpose is quite fully considered in *Milwaukee & St. P. Ry. Co.* v. *Board of Sup'rs of Crawford County*, 29 Wis. 116 ; *Milwaukee & St. P. Ry. Co.* v. *City of Milwaukee*, 34 Wis. 271 ; *Chicago, M. & St. P. Ry. Co.* v. *Board of Sup'rs of Crawford County*, 48 Wis. 666 (5 N. W. 3), and, within the doctrine of these cases, we are of the opinion that, under the allegations of the complaint, the operation of the hotel in question cannot be held, as a matter of law, to be a " legitimate railroad purpose," and within the terms of the grant from

the plaintiff, because it is alleged that it is not necessary, and does not add to the comfort, convenience, or safety of the railway passengers, but is for the accommodation of the general public. It seems to us, therefore, the demurrer should be overruled, and the case tried upon its merits, so that the court, aided by the testimony, can determine whether the hotel is in fact a legitimate railroad purpose.

But little need be said in reference to the second cause of suit. The complaint does not show any injury to the plaintiff by the alleged violation of the contract pleaded. It is nowhere alleged that he ever attempted to avail himself of the right given by the contract, although a period of sixteen years has elapsed since its execution; nor is it averred that he has any use for the water, or is damaged or injured in any way by its alleged diversion. It follows that the decree of the court below must be reversed, the demurrer overruled, and the cause remanded for further proceedings consistent with this opinion, and it is so ordered.                                     REVERSED.

---

Decided 11 June; rehearing denied 13 August, 1900.