Argued 8 July; decided 21 July, 1902.

**ABRAHAM *v.* OREGON & CAL. RAILROAD CO.**

[69 Pac. 653.]

RAILROADS—GRANT FOR LEGITIMATE RAILROAD PURPOSES.

1. Land used for a railroad hotel and eating house may be for "legitimate railroad and depot purposes"; whether it is or not will depend upon a variety of conditions and circumstances, important among which is the good faith of the railroad company in so using the property as an incident to the operation of the road, and where such use is in good faith the courts will hesitate about disturbing it.

IDEM—FACTS IN EVIDENCE.

2. The station where the land was situated was a small one, at which a large force of men necessarily made their headquarters, and where freight and delayed passenger trains were accustomed to stop for meals, though no passenger trains stopped regularly for such purpose. There was no other station where employes or passengers could be accommodated with meals nearer than 35 miles. *Held,* that the construction of the hotel and eating house on the land was a use of it for a legitimate railroad purpose.

IDEM—ACCOMMODATIONS TO THE PUBLIC.

3. Where land is granted to a railroad company "for all legitimate railroad and depot purposes," and a hotel and eating house is erected on the land as an incident to the operation of the road, the fact that accommodations are granted the general public apart from strictly railroad business does not render the use of the land repugnant to the grant; nor is the question affected by the fact that there is a public hotel near by ample to accommodate the passengers and railroad employes.

From Douglas: JAMES W. HAMILTON, Judge.

Suit by Morris Abraham as administrator of the estate of Sol Abraham, deceased, substituted for Sol Abraham, against the

Oregon & California Railroad Company and others.   From a judgment dismissing his complaint, plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the name of *Albert Abra-ham,* with an oral argument by *Mr. Abraham* and *Mr. J. C. Fullerton.*

For respondents there was a brief over the names of *Wm. D. Fenton, Wm. T. Muir, Willis & Rice,* and *R. A. Leiter,* with an oral argument by *Mr. Fenton* and *Mr. Leiter.*

MR. JUSTICE BEAN delivered the opinion.

This is a suit to enjoin the defendants from operating or permitting to be operated, a hotel or eating house on land conveyed to the defendant Oregon & California Railroad Co., by the plaintiff and his grantors, "for all legitimate railroad, depot, and warehouse purposes," on the ground that it is maintained and operated for the accommodation of the general public, and is not necessary or convenient for the operation of defendants' railway. The complaint was held sufficient on demurrer *(Abraham* v. *Oregon & C. R. Co.,* 37 Or. 495, 60 Pac. 899, 12 Am. & Eng. R. R. Cas. N. S., 250, 82 Am. St. Rep. 779), and, upon the cause being remanded to the court below, the defendants answered.   They deny that the hotel or eating house complained of is not necessary or convenient for the operation of the railway, and affirmatively allege that the defendant the Southern Pacific Company, finding that the establishment of an eating station was necessary in order to carry out and facilitate the operation of its railway, and to enable its employes and passengers to be fed, housed, and entertained, leased a portion of said premises on August 1, 1897, to the defendant Clarke, in consideration of which she covenanted and agreed to erect and maintain thereon, at her own expense, a good and substantial building "for eating house and hotel purposes," for the use and accommodation of its passengers and employes; that thereafter, in pursuance of such lease, Mrs. Clarke did construct, according to plans approved by the Southern Pa-

cific Company, a good and substantial building, which she opened
on the 25th of November, 1897, to the traveling public and the
passengers and employes of the railway company, and has ever
since maintained and operated it as an eating house or hotel, and
that during all of such time its maintenance was, and is now,
necessary and convenient for the use and operation of the railway.
A demurrer to the answer was overruled, and a reply filed, put-
ting in issue the material allegations thereof. Upon the trial the
court found from the evidence that it was and is necessary for the
railway company to have and maintain at Glendale an eating
station for the accommodation of its passengers and employes;
that the hotel operated by the defendant Clarke was constructed
and has been maintained at the company's instance and request,
for that purpose, and that it is not violative of any covenant in
the deed of conveyance from plaintiff to the defendant the Ore-
gon & California Railroad Co., although it has been and is kept
open to the general public. The complaint was thereupon dis-
missed, and the plaintiff appeals.

1. The law of this case was settled on the former appeal. It
was there said: "Where hotels or eating houses appear to be
reasonably necessary for the convenience of its employes and pas-
sengers, their maintenance is a legitimate railroad purpose. But
an eating house or hotel kept for the accommodation of the gen-
eral public, and not as an incident to the operation and manage-
ment of the railway, cannot be so considered. As to whether a
given hotel or eating house is maintained for railroad purposes
is therefore largely a mixed question of law and fact, to be de-
termined from the circumstances of each particular case": *Abra-
ham* v. *Oregon & C. R. Co.,* 37 Or. 495 (60 Pac. 899, 82 Am. St.
Rep. 779, 12 Am. & Eng. R. R. Cas. N. S., 250.) Within this
doctrine, the maintenance of an eating house or hotel is a legiti-
mate railroad purpose when the convenience of the employes and
passengers of the company is subserved by it, but a hotel main-
tained for the general public alone is not: *State* v. *Baltimore &
O. R. Co.,* 48 Md. 49. Yet, if an eating house or hotel is reasonably
convenient and appropriate to the operation and maintenance of
the road, it may be built or operated by the railroad company, al-

though depending for part of its patronage upon the general
public. Much evidence was given in this case, tending to show
the amount of patronage the hotel derived from the general
public as distinguished from that of passengers and employes of
the company; the witnesses being hopelessly in conflict upon the
subject. But we do not understand that the character of its use
is to be determined by segregating strictly railroad business from
that done with the general public, and deciding as either may
happen to preponderate. Nor is the question of the advisability
of maintaining such a place for the convenience of passengers
and employes affected alone by the number of people availing
themselves of the privilege offered, or even by the number of
trains scheduled to stop for meals. The locality, the nature of
the physical surroundings, the traffic and business of the road,
and many other circumstances, should be considered; and, after
all, it must ultimately depend to a large extent upon whether the
business is carried on in good faith, as an incident to the opera-
tion of the road, or is entirely disassociated from it. The courts
cannot undertake to draw any nice distinction, or apply any ar-
bitrary test, to determine the necessity of establishing or main-
taining such places of entertainment by railway companies, and,
so long as it appears that they are not wholly foreign to the busi-
ness of the corporation, the courts will not interfere with them.
In the very nature of things, much must necessarily depend upon
the judgment and discretion of the officers and managers of the
company. They establish and maintain eating stations with ref-
erence to fixed or probable schedules and operation of trains,
peculiarities of varying locations, or other general needs and
exigencies of the business, all of which are within their cogni-
zance and knowledge; and their judgment should prevail so long
as they do not divert the property to uses wholly foreign to its
organization or the terms of the grant conveying it: *Proprietors,
etc.,* v. *Nashua & L. R. Co.,* 104 Mass. 1, 9 (6 Am. Rep. 181);
*Pierce* v. *Boston & L. R. Co.,* 141 Mass. 481 (6 N. E. 96); *Illi-
nois Cent. R. Co.* v. *Wathen,* 17 Ill. App. 582, 589.

2. Apply these principles to the case in hand, and there can
be but one result. Glendale is a small station at the head of

Cow Creek Canyon. It is at the foot of a very difficult grade, where the company is obliged to keep helper engines stationed to assist heavy trains over the mountains. From Glendale to the mouth of the canyon is about thirty miles, along which the road runs through a narrow defile, making it expensive and difficult to maintain. It is necessary for the company to keep a large force of men constantly employed in the canyon for the purpose of patrolling and keeping the road in repair, who must necessarily make their headquarters at Glendale. In addition to this, freight and delayed passenger trains are accustomed to stop at the station for meals, and, although passenger trains have not stopped regularly for such purpose since the construction of the hotel in question, the evidence shows that, during a considerable portion of the time since the road was built, Glendale has been a regular eating station for passengers on the company's trains, and may become so again at any time. There is no other station where employes or passengers of the company can be accommodated with meals between Riddles, some thirty-five miles north, and Grants Pass, about the same distance south. The managers of the road testify that it is very desirable to have an eating house or hotel, under the supervision and control of the company, at Glendale, on account of the peculiar location of the town, and the necessity of providing board and lodging for the crews of the helper engines and freight trains, the men employed in patrolling and keeping the road in repair, and passengers traveling on its trains. It was for this purpose the hotel in question was built, according to plans submitted to and approved by the manager of the company, with a dining room large enough to accommodate one hundred persons, but with only eight or ten sleeping rooms.

3. It is argued, however, that there is no necessity for the defendants maintaining or operating an eating house or hotel, because the plaintiff is conducting one near the depot grounds, which is amply sufficient for the accommodation of the passengers and employes of the railway company. But the fact that some other person has provided accommodations which may be used if desired does not determine whether the defendants' eating house is or is not a legitimate railroad purpose. The testimony

shows many reasons why it is desirable that eating houses and hotels at such stations as Glendale should be under the supervision and subject to the inspection of the managers of the railway company. Aside from this, however, if the hotel or eating house is reasonably convenient and appropriate to the maintenance and operation of the road, it does not matter that it may come in competition with other places of like character, nor that it may furnish accommodations for persons not connected with the road : *Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454. The testimony further shows, and it is undisputed, that it is desirable and customary for railroad eating houses to have more or less outside business, as it helps pay expenses, and enables the proprietors to serve better meals and furnish better accommodations for the passengers and employes of the company. Such is the custom at other eating stations on the railroad, and there is no reason why it should not be followed in this instance. Our conclusion from the evidence is that the hotel or eating house maintained by the defendants, or under their supervision, is convenient and proper as an incident to the management and operation of the railroad, and is therefore a legitimate railroad purpose within the meaning of the deed from the plaintiff to the defendants. The decree of the court below will therefore be affirmed.

AFFIRMED.