Doe, *ex dem.* of L. P. Thornton *et al.*, plaintiffs in error, *vs.* Roe, casual ejector, and L. N. Trammell *et al.*, tenants, defendants in error.

(See the remarks of Brown, C. J., at the end of the opinion.)

When a deed was executed and delivered, conveying an unconditional fee simple title to a tract of land, which contained the following words: "It being expressly understood *by the parties* that the said tract or parcel of land is not to be put to any other use than that of a depot square, and that no business or improvements are to be put on the said tract but that which is immediately connected with the Western and Atlantic Railroad:" *Held*, that these words in the deed were words of *covenant*, and not words of *condition*, and that the plaintiff's remedy for a breach thereof was an action thereon for *damages*, and not a *forfeiture* of the estate for condition broken.

Ejectment    Conditions and Covenants in deeds.    Before Judge Parrott.    Whitfield Superior Court.    April Term, 1869.

This was ejectment in favor of the heirs of Mark Thornton, for a parcel of land in Dalton, Georgia, whereon are the passenger and freight depots of the Western & Atlantic Rail Road.    The pleas were the general issue and the statute of limitations.    As the cause turned upon the construction of a clause in Mark Thornton's deed, it was agreed that the Judge should hear the cause and direct the jury what to find. It was admitted that the land was in said county; that the tenants, (who were employes of the Railroad) were in possession when the suit was brought, but that the Superinten-

Thornton *et al.*, *vs.* Trammell *et al.*

dent of said Railroad was the real party defendant; that Thornton died in 1864, before this suit was commenced, and that plaintiff's lessors were his heirs; that the authorities of said Railroad took possession of the premises under Mark Thornton, and claim title and possession under him only; that they had so held the premises (except the foundry property) from the date of Thornton's deed; that before Thornton's said deed he had conveyed to other parties all his interest in the land lots, with certain excepted portions thereof, described in his deed of 24th of September, 1846, to White. But either party was at liberty to disprove any fact so admitted. Upon this admission the plaintiffs rested their cause. The defendants read in evidence, a deed made the 13th of May, 1839, whereby Mark Thornton, in consideration of $161 66, granted "to the State for the use and purpose of said Railroad" the right of way therein described, and for "the perpetual guaranty of said right of way "to said State he bound himself, his "heirs and assigns, in fee simple forever."

They also read another deed from Mark Thornton, made the 22d of October, 1846, to George W. Crawford, Governor of the State of Georgia, and his successors in office, made in consideration of one dollar, conveying about eleven acres of land therein described, which were the premises in dispute. This deed was in the usual form, with this exception: Immediately after the description of the land, are the following words: "It being expressly understood by the parties that the said tract or parcel of land is not to be put to any other use than that of a depot square, and that no business or improvements (are) to be put on the said tract but that which is immediately connected with the Western and Atlantic Railroad, together with all and singular, the rights, members and appurtenances thereof whatever, to the said described tract or parcel of land, and all and singular, the premises and appurtenances thereunto belonging as aforesaid and any part thereof, unto the said George W. Crawford and his successors in office, and to their assigns, forever; and the said Mark Thornton, for himself and his heirs, and the de-

scribed tract or parcel of land, and premises aforesaid, and any part thereof unto the said George W. Crawford and his successors, and to his and their assigns, against himself and his heirs, and any and all other person and persons whomsoever, shall and will warrant and forever defend by these presents. In witness whereof," etc.

It was admitted that neither Thornton nor his heirs had owned any land in Dalton or its immediate vicinity, since 1847. Defendants closed.

The plaintiffs, in rebuttal, read in evidence, a deed from the Dalton City Company, conveying certain land to Howell Cobb, Governor of the State of Georgia, and his successors in office, in consideration of $200.00 and another parcel of land, and in consideration that the land conveyed therein should be used solely for the purpose of depot lot and right of way of the Western and Atlantic Railroad, and that no business or improvements should be put upon said conveyed premises save only such as are immediately connected with the business of said Railroad. It was dated the 28th of July, 1852. And they read also a deed from Howell Cobb, Governor of Georgia, made in January 1853, in consideration of said last named deed, conveying to said company, exclusively for a foundry building or yard or purposes connected therewith, a portion of said premises in dispute. They showed that the Dalton City Company, in 1853, took possession of said portion of the premises in dispute so conveyed to it; that they had a well, an office, etc., on the same; that part of Camp's hotel was on the premises in dispute, to-wit: About four feet at one end and five feet at another; that there was a blacksmith shop and a dwelling, known as the Dooly house, on it, and that this Dooly house had been sometimes occupied by employes of the W. & A. R. R., and sometimes by persons not so employed. It appeared that the encroachment of Camp's hotel on said premises was because of a mistake as to the lines; that the blacksmith shop had been occupied and used by the blacksmith of the W. & A. R. R.; that the Dooly house had been built by order of the Superintendent, and its use and occupation or rent was given

Thornton *et al.*, *vs.* Trammell *et al.*

to Dooly as part of his salary as Master of Transportation, that it had never been occupied by any but an employe of the W. & A. R. R., except for a while by a boarding-house keeper, who agreed to board some of its employes.  It was not denied that the Dalton City Company occupied the part of the premises in dispute, sold to it by Howell Cobb, Governor, but it was shown that this exchange of lands was to get a convenient stock yard for said Railroad.

The defendants also read in evidence a deed made the 24th of September, 1846, by Mark Thornton, to Edward White, covering land lots Nos. 237, 220, 219, containing one hundred and sixty acres, with certain parts excepted, and therein described.  One of these exceptions is "the parcel of land known as the depot square," describing the same.

WHITE testified that, pending his negotiations to buy said three lots, Thornton told him that there were ten acres which he proposed to give to the State, expecting therefor the honor of making the gift and perhaps a free ticket for life, and would not sell it; that he suggested that such donations of land were generally restricted to the use of the road, lest other business, injurious to surrounding property-holders, should be done upon it; Thornton said he would so restrict it, and thus protect White in the surrounding property; it was first laid out in a square, its shape was changed by White's consent, and White made a deed to Thornton, and one to Governor Crawford to carry out such change.

He testified that he would not have bought the land from Thornton but for such restriction in the deed to the State, and understood that Thornton made it for White's protection, and that the deed was not drawn by a lawyer.  This testimony came in over plaintiff's objection.  It was admitted that the other parts of said lots excepted by Thornton in his deed to White, were about a half a mile from the depot.

The Court directed the jury to find for the defendants, which was done.  Of this direction complaint is here made by Thornton's heirs.  When the argument was begun here, objection was made to Brown, Chief Justice, presiding, upon the ground of interest in the question. The Associate Judges,

upon the Chief Justice's statement of his position in that regard, said that they thought he was not disqualified from presiding. He remained upon the bench during the argument, but as will be seen, differed with his associates, and declined giving a dissentient opinion.

HOGE & SPRAYBERY, WM. K. MOORE, for plaintiffs in error, furnished no brief to the Reporter.

D. A. WALKER, McCUTCHEN & SHUMATE, for defendants, said ejectment did not lie against the W. & A. R. R. Rev. Code, sections 967, 979; Acts of 1852, 110; *Mason vs. Cooper,* Sup't, 19 Ga. R., 54–3; *Walker vs. Spullock, Sup't,* 23 *Ga. R.,* 438; *W. & A. R. R. vs. Carleton,* 28 Ga. R., 182; *Dobbins vs O. & A. R. R. Co.,* 37 *Ga. R.,* 241. The words of restriction in Thornton's deed are not words of condition, but of covenant, 4 Kent Com., 129, 130, 132; 1 Greenl, Cr. Dig., 466, Tit. 13, ch. 1, sec. 1–3; Taylor's L. & T., section 271, 278, 290–1, 412; 2 Greenl., Cr. Dig., to pp. 428; Tit. 32, ch. 25, sec. 2-10; Doe ex dem. Wilson *vs.* Phillips, 2 Bingh. R., 15-17; Ad. on Eject. 93, 1 J. Cas., 125; Arch L. and T., 95-6; Code, sections 2222, 3060; F. on Remainders, sec. 18; Shepherd's Touchstone, 121 to 124; 15 Pa. E. T. R., (3 Harris) 296, etc. The title is good by prescription, Ang. on Lim., section 369, Cobb's Dig. 559-563; Acts 1856; 223 Irwin's Code, section 2641; Watkins *vs.* Woolfolk, 5 Ga. R., 261; King *vs.* Levers, 36 Ga. R., 199.

WARNER, J.

This was an action of ejectment, instituted in the Court below, by the heirs-at-law of Mark Thornton, deceased, to recover the possession of eleven acres of land in the city of Dalton, with the improvements thereon, including the depot building of the Western and Atlantic Rail Road. The plaintiffs insist, that they are entitled to recover the premises in dispute, upon the ground that Mark Thornton, the plaintiffs' ancestor, conveyed the land by deed, on the 22d day of October, 1846, to the Governor of the State, and his successors

Thornton *et al.*, *vs.* Trammell *et al.*

in office, upon *condition,* that the same should be used as a " depot square," and that the grantee of the land having broken the condition, the estate became *forfeited* to the grantor or his heirs, and that the latter had now the legal right to enter upon the land : and *the* question in the case is, whether the words contained in the deed, are to be construed as conveying an estate in the land upon *condition,* or whether the words are to be construed as creating a *covenant* between the parties, as to the use to which the land conveyed was to be appropriated.

What is an estate upon condition ? "An estate on condition, (says Blackstone,) expressed in the grant itself, is where an estate is granted, either in fee simple or otherwise, with an *express qualification* annexed, whereby the estate granted, shall either commence, be enlarged, or be *defeated,* upon performance, or *breach* of such qualification or *condition.* These conditions are, therefore, either precedent, or subsequent :" 2d Bl. Com. 154. "A condition may be created by *express words,* which is called a condition in fact : as where a feoffment is made of lands, reserving rent, payable on a certain day, upon *condition,* that, if it be not paid on the day, the feoffer may *re-enter,* etc. And *note,* that it is a general note, that a condition which destroys, or *defeats* the estate, or grant, is to be construed *strictly* :" 2 Bacon's Ab., 279, title conditions. "My Lord Coke says that, by inserting the word *condition,* or *sub-condition,* conditions are most properly created ; but there are also other words, says he, that will do as effectually as the word *proviso* : but then it must not depend upon *another sentence :* also the words must be those of *the grantor,* and *compulsory,* to enforce the grantee to do *some act :*" 2 Bacon's Ab., 280. See 2268-2269 sections of the Revised Code. "The law inclines (as declared by the latter section of the Code) to construe conditions, to be subsequent, rather than precedent, and to be remedied by *damages* rather than by *forfeiture.*" Conditions subsequent, says Chancellor Kent, are to be construed *strictly,* because they tend to destroy estates ; and the rigorous exaction of them is a species of *summum jus,* and in many cases, hardly reconcileable with *con-*

*science*: 4 Kent's Com., 129. If it be doubtful, says the same learned author, whether a clause in a deed be a *covenant* or a *condition*, the Courts will incline against the *latter* construction; for a covenant is far preferable to the tenant: 4 Kent's Com., 132.

When Thornton, the grantor of the land, conveyed it to the grantee, he had the power and dominion over it, and could have granted the same upon such *terms* and *conditions*, as he thought proper to *express in his grant*, consistent with the laws of the land; and the grantee would have taken it subject to the terms and conditions *so expressed* in the deed of conveyance. Let us examine the deed of conveyance, and see what are the terms, and conditions, (if any) expressed therein, upon which the land was conveyed by the grantor to the grantee. The deed conveys an absolute fee simple title to the land, with a covenant of warranty. There is no condition annexed to *the grant*, and none imposed on the grantee, by any *words expressed in the deed*. The grantor conveys, and the grantee takes under the deed, an absolute fee simple estate in the land. The following words are recited in the deed: "It being expressly understood by *the parties* that the said tract, or parcel of land, is not to be put to any other use than that of a depot square, and that no business, or improvements, is to be put on the said tract but that which is immediately connected with the Western and Atlantic Railroad." The conveyance itself, is an *unqualified grant* of the land to the grantee. The *words* of the grantor in conveying the land to the grantee, impose *no conditions* upon the latter, which would be *compulsory* on him, to do any act whatever. Independent of the *understanding*, or *covenant of the parties*, as expressed in the deed, there is nothing in this conveyance to distinguish it from any other deed of bargain and sale, conveying an absolute fee simple estate in a tract of land There being *no condition expressed in the grant* of the land to the grantee, by the grantor, of course, there can be no *forfeiture* of the grantee's estate therein, for *condition broken*. If the *covenant* of the grantee has been broken, the plaintiffs have an adequate remedy by an action thereon to

Thornton *et al., vs.* Trammell *et al.*

recover *damages*. An action of covenant may be brought as well on a deed *poll,* as on a deed *indented*: 2 Bacon's Ab., 554, title covenant. Independent of the common law rule of construction, this conveyance, under the provisions of the Act of 1821, which was of force at the time it was executed, vested an absolute *unconditional* fee simple estate to the land in the guarantee: Cobb's Dig., 169. The substance of the second section of the Act of 1821, is incorporated into the Code. See section 2222. If the *covenant* contained in this deed, would, by its terms, have created a *forfeiture* of the estate, the Court ought to give such a construction to it as to prevent that result, for, as Mr. Justice Spencer said in Jackson vs. Brownson (7 John. Rep., 235,) "It is an established principle, that in construing a covenant which is to work a forfeiture, Courts adhere *strictly* to the precise words of the condition, in order to prevent the forfeiture. This rule, for its equity and reasonableness, deserves constantly to be kept in view. It is in most cases rigorous and harsh to break up a lease, for the violation of covenants which may be compensated in *damages*; and the present case appears to be one of that description." See Jackson vs McClallon to the same point, 8 Cowen's Rep., 295. If the plaintiffs have sustained any damage by reason of a breach of the covenant in the deed of conveyance of Mark Thornton, in relation to the use of the depot square, they must seek their remedy by an action thereon, to recover damages for such breach, and not for a *forfeiture* of the estate conveyed to the grantee by an absolute unconditional fee simple title, from the guarantee.

Let the judgment of the Court below be affirmed.

BROWN, C. J.

I am unable to bring my mind to the conclusion that this was a covenant between the Road and Thornton. If so, the road would be bound by the covenant, to keep the depot on this square perpetually, and could not abandon it. It seems to me the road is under no such obligation, and that it may remove the depot to another place at any time, if the

authorities should find that the public interest demands the change, without liability for damages. But on such removal the depot square would revert to Thornton's heirs, on account of the condition broken by the road.

Objection was made by counsel for the railroad to my presiding in this case, on the ground that I was of counsel while at the bar in a case somewhat similar to this, which is not yet decided, in which I was promised a fee mostly conditional. In that case the language of the deed is different; and I have turned over the case with the obligation for the fee to other counsel. Under these circumstances both my learned associates concur with me in opinion, that I am not disqualified to preside in this case. But, as I am unable to concur in the decision made by the majority of the Court, I have concluded to pronounce no judgment. I therefore deliver no dissenting opinion.