# CHARLESTON.

LAWRENCE E. SANDS, EXR. *v.* EDWARD F. HOLBERT.

Submitted March 20, 1923. Decided April 17, 1923.

1. DEEDS—*Nonvesting or Defeasance of Estate Conveyed by Deed Always Prevented if Possible.*

' The law favors the vesting of estates, and is adverse to their destruction after they have been vested; and hence, the firmly established rule is that courts will always construe a stipulation in a deed so as to prevent either the nonvesting or defeasance of an estate conveyed thereby, if possible. (p. 577).

2. EJECTMENT—*Will Lie in Favor of Grantor for Broken Condition Subsequent Working Defeasance Giving Right of Re-entry.*

Where a deed contains a stipulation which clearly creates a condition subsequent working defeasance of the estate and giving the grantor a right of re-entry, ejectment will lie in favor of the grantor whenever the condition has been broken. (p. 577).

3. DEEDS—*Broken Covenant to Erect Stipulated Building on Land Conveyed Held not Ipso Facto to Work Defeasance or Give Grantor Right of Re-entry.*

Where a deed to land is for value and upon reservations, restrictions, limitations and conditions, among which is an

agreement wherein the grantee stipulates that he will erect
a dwelling house on the land conveyed, at a cost of not less
than $5,000 and will begin its construction within three
months from the date of the deed and prosecute the same
to completion with reasonable diligence, and upon failure so
to do, he will, upon a tender to him by grantor of the prin-
cipal sum paid on the land, re-convey the land to the grantor;
the failure of the grantee to construct the dwelling, and tender
to him by the grantor of the principal sum paid for the land
with interest, does not, *ipso facto*, work a defeasance of his
title and estate and give the grantor a right of re-entry.
(p. 577).

Error to Circuit Court, Marion County.

Action by Lawrence E. Sands, Executor, against Edward F.
Holbert.    Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*William S. Haymond* and *Frank C. Haymond,* for plaintiff
in error.

*Neely & Lively,* for defendant in error.

LIVELY, JUDGE:

This writ of error is prosecuted by defendant, Holbert, to
a judgment of the circuit court entered the 7th day of
January, 1922, upon a directed verdict in favor of plaintiff.

On September 16, 1916, plaintiff and W. H. Sands, executors
of J. E. Sands, deceased, executed a deed to defendant for a
tract of land described as lot No. 10 of the "Sands Place,"
for the sum of $1500, one-third of which was paid in cash
and for the remainder notes were given at one and two years.
It appears that the "Sands Place" was divided into lots by
the executors, and designed as a suburban addition to the
city of Fairmont, for dwelling purposes exclusively. The
deed was upon further consideration of the "reservations,
restrictions, limitations and conditions," set out in five para-
graphs, the third of which is as follows:   "The parcel of land
hereby conveyed shall not be sub-divided by the said party
of the second part nor his heirs or assigns, but the same shall
conform as to grade, enclosures and location of structure
thereon, to the general landscape plan indicated and laid

down on said map or plat; not more than one residence or dwelling house shall be erected or maintained on said lot and the same so erected and maintained shall cost not less than the sum of Five Thousand Dollars. And the said party of the second part agrees to begin construction of said dwelling within three months from the date of these presents and prosecute the same to completion with reasonable diligence, and upon a failure to comply with this requirement, the said party of the second part hereby agrees upon the demand of said parties of the first part, and a tender by them to the party of the second part of the principal sum theretofore paid by him on account *of said purchase money to re-convey* the said property to the said parties of the first part." Within the time for beginning the construction of the dwelling, Holbert formulated plans therefor, but because of war conditions and consequent high cost of labor and material, the building was not begun, he having obtained a waiver of the time from W. H. Sands, the executor, who was in active charge of the affairs of the estate in relation to the development of the "Sands Place," who made it plain that the waiver was not to affect in any manner the rights of the grantors under the deed. W. H. Sands afterwards died, and there appears to to have been nothing done toward building on the lot; and on February 9, 1920, L. E. Sands, sole surviving executor, wrote defendant that the deferred purchase money notes would be in a Wheeling bank for payment on March 1, 1920, and requested him to take care of them. Holbert did not pay the notes as requested, and did not answer the communication. On August 1, 1921, plaintiff served written notice on Holbert that he had violated his agreement to begin the construction of a dwelling, tendered to him, through the sheriff who served the notice, the $500 theretofore paid as purchase money, with interest thereon, and demanded that Holbert forthwith re-convey to plaintiff the property in question according to the stipulation of the deed. Holbert refused the money tendered, and declined to re-convey the property, but shortly afterwards offered to pay the notes, and indicated his intention of beginning the construction of the dwelling. Plaintiff relied on his claim of forfeiture of title under the

terms of the deed for non-performance of the condition, and
filed his declaration in ejectment at October Rules, 1921.   At
the November, 1921, term, defendant plead the general issue,
and filed notice in writing that he would rely, as a defense,
upon the deed and the provisions thereof, which notice the
court upon objection refused to permit defendant to file.
At the conclusion of plaintiff's evidence, defendant moved
the court to strike out all of plaintiff's evidence and direct
a verdict for defendant, which was overruled, and exceptions
taken.   After defendant had introduced his evidence and
plaintiff had offered evidence in rebuttal, and both parties
had rested, defendant renewed his motion to strike out all
of the evidence on behalf of the plaintiff, and at the same
time requested an instructed verdict in his favor, which the
court again refused.   Upon motion of plaintiff the court
gave a peremptory instruction to find for plaintiff, the jury
responded accordingly, and the usual motions were made by
defendant, which were overruled.

Many points of error are assigned.   The main points are:
(1) the court erred in construing the deed to contain a con-
dition subsequent, the non-performance of which resulted in
a forfeiture of defendant's estate; and consequently at the
time the suit was instituted the legal title was not vested in
plaintiff; (2) plaintiff did not "keep his tender good" be-
cause he did not offer to pay or bring into court for bene-
fit of defendant the purchase money paid and the two pur-
chase money notes; (3) plaintiff, by his acts and the acts of his
co-executor, waived any right of forfeiture, if any there was,
for non-performance of the alleged condition subsequent.

The primary question is whether the stipulation for con-
struction of the dwelling house within the time named is a
condition subsequent the non-performance of which defeats
the title and *ipso facto* reinvests it in the grantors; or whether
it is a covenant or agreement specifying a mode of procedure
by which the title may be recovered by grantors upon failure
of grantee to build the house.   Consideration of the other
points of error depend upon the decision of this primary and
controlling point.

If the title be not in plaintiff with right of re-entry, then

ejectment will not lie. It is well established that unless plaintiff has the legal title he cannot maintain an action of ejectment. *Taylor* v. *Russell,* 65 W. Va. 632; 64 S. E. 923; *Witten* v. *St. Clair,* 27 W. Va. 762; *Tyler on Ejectment* p. 482 ;*Riffle* v. *Skinner,* 67 W. Va. 75; 67 S. E. 1075; 4 Va. & W. Va. Ency. 878. But if the stipulation in the deed, above quoted, is a condition subsequent the breach of which works a forfeiture of the title and reinvestiture thereof in the grantors, ejectment may be maintained under sec. 16, chap. 93 of the Code. At common law, in order to enforce a forfeiture of a freehold, an entry on the land was necessary, unless the grantor was in possession at the time of the breach. Livery of seizin was of such notoriety that the forfeiture and divestiture was required to be of equal notoriety to be effectual. Our statute has obviated the common law procedure, and when a person has the right of re-entry into lands by reason of a breach of a condition subsequent, he may proceed by declaration in ejectment which obviates demand and re-entry required at common law.

Obviously the right of plaintiff to maintain this suit in ejectment depends upon the meaning and purpose of the stipulation in the deed  If thereby defendant, by reason of his failure to build, has been divested of the title and plaintiff given a right of re-entry, plaintiff can maintain ejectment and should prevail. The lower court so decided. All of the text writers and decisions agree on the rule of construction that conditions subsequent in a deed are not favored as they tend to destroy vested estates. If it be doubtful whether a provision in a deed is a condition or a covenant the latter will always be adopted. A condition subsequent must be created by express terms or clear implication. Even where apt words are used for the creation of a condition, yet in the absence of express  provisions for re-entry or forfeiture, the court will not declare that a condition has been created, but will look to the whole deed, the relation and situation of the parties and the acts to be performed, and will determine the true intent of the parties. *Scovill* v. *McMahon,* 62 Conn. 378; 36 Am. St. Repts. 350; *Faith* v. *Bowles,* 86 Md. 13; 2 *Tif. Real Prop.* sec. 79. *Millan* v. *Kephart,* 18 Grat. 1; *2 Dev. Deeds,* (3rd

Ed.) sec. 970; *Haydon* v. *Railroad,* 222 Mo. 126; *Woodruff* v.
*Woodruff* (N. J.), 1 L. R. A. 380; *Hoyt* v. *Kimball,* 49 N. H.
322; *Packard* v. *Ames,* 16 Gray, 327; *Thornton* v. *Trammell,*
39 Ga. 202; *Kilgore* v. *County Court,* 80 W. Va. 283; *Rail-
way Co.* v. *Honaker,* 66 W. Va. 136; *Carper* v. *Gas Co.,* 78 W.
Va. 442; *4 Kent Com.* (14th Ed.) 152. In *Woodruff* v. *Wood-
ruff,* cited, the land was conveyed upon condition that if the
grantor survived the grantee, he, the grantor, should have
the right, within 18 months thereafter, to purchase back the
land at a valuation to be made by arbitrators selected for
that purpose. It was held that such provision, although
stated to be a condition, was a covenant. The grantor had
the right to take back the land upon the death of grantee, but
both parties, the grantor and the representative of the
grantee, had to act to give value to the right. There was no
right of re-entry, or clause of forfeiture. Arbitrators had to
be selected, if the sum to be paid back was not agreed upon,
and after they had determined that sum, the title was yet in
the grantee's heirs, and was not automatically extracted by
tender. A deed of reconveyance was necessary.

Counsel for plaintiff assert that while there are no words
of reverter, defeasance or forfeiture in the deed to Holbert
under consideration, the language employed, and above
quoted, imperatively demands it to be interpreted as a con-
dition subsequent. It is pointed out that the deed is made
"subject to the following covenants, conditions, limitations
and restrictions." Then it is stipulated (1) that the land
shall not be sold nor leased to a person of African or Italian
descent; (2) no shop, store, factory, saloon, business house,
hospital or like institution shall be built; (3) no sub-division
of the land shall be made, and the lot shall conform as to
grade and location of structure thereon to the general land-
scape plan laid down on a map thereof, and only one dwelling
house shall be built thereon at a cost of not less than $5,000;
(4) then follows the clause quoted, relating to the time and
completion of the dwelling and the right of the grantors to a
deed therefor upon tender of amount paid by grantee, if
the dwelling was not erected according to the agreement. To
sustain this interpretation we are cited to *Martin* v. *Railroad,*

37 W. Va. 349; *Pence* v. *Tidewater Townsite Corp.*, 103 S. E. 694; *Ball* v. *Milliken*, (R. L.), 76 A, 789; 37 L. R. A. (N. S.) 623; *Clapp* v. *Wilder*, 176 Mass. 333; *Rooks Ck. Evan. Lutheran Church* v. *First Lutheran Church* (Ill.) 124 N. E. 796; and other cases hereinafter briefly referred to. Our case of *Martin* v. *Railroad,* cited, has little application. That deed was to the railroad company with a condition of defeasance as follows: "And if the said party of the second part shall fail to keep and perform any of the said covenants, then its right, title, interest and claim in and to said property shall wholly cease and determine, and thereupon the said parties of the first part, their heirs and assigns may re-enter and be possessed as of their former estate." The deed in *Pence* v. *Tidewater,* cited, provided that as a part of the consideration Pence, the grantee, was to erect upon the lots, within a stated time, a building to cost not less than $750, "and, should the said A. E. Pence fail to erect said buildings within the time specified, then and in that case lots 20, 21 and 22 shall *revert* to the said Tidewater Townsite Corporation without cost or charge to the said party of the first part." Here was a condition with a plain clause of reverter ("shall revert") upon breach; and in a suit in equity to annul and rescind the deed the court said that the plaintiff's remedy was by action of ejectment under the Virginia statute similar to sec. 16 chap. 93 of our Code. We think that case has little application to the one before us, in which there is no clause of reverter or defeasance.

We have carefully considered the case of *Ball* v. *Milliken,* 31 R. I. 36, 76 Atl. 789; 37 L. R. A. 623, which was a suit in equity for the purpose of requiring Millikin to convey to the complainant by quitclaim deed all her right, title and interest in the land in controversy; and as alternative relief to enjoin her from using or leasing the property for any purposes other than those specifically set forth in the original deed from Ball to Hooper. It appears that Ball deeded the premises in controversy to Hooper in 1861 with the following restriction or condition: "And it is expressly understood that the premises herein conveyed is for the specific purpose of a blacksmith and wheelright shop. The said J. Hooper,

his heirs and assigns, shall not convert the shop or building that may be erected to any other purpose than here specified, towit, blacksmithing, wheelwrighting, repairing tin, copper, saddles, harness, tackle, and the using of a tin lathe, and repairing of firearms, and no other purpose whatever. And the said grantee, for himself and his heirs and assigns, promises to re-convey said estate to said grantor, his heirs, executors and assigns, in case of any violation of the foregoing provisions in this deed." Ball devised his land, including all his right, title and interest in the Hooper lot, to his son Cassius C. Ball. In the meantime, Hooper had used the property for purposes other than those mentioned in the deed to him, and sold the same to defendant Milliken who continued to put it to the same use as did her grantor, Hooper. She admitted in her answer that she had used it for other purposes than those set forth in the deed from Ball to Hooper, but interposed several defenses, the chief of which was that the complainant by his bill showed no right as devisee to maintain the suit; that the agreement did not run with the land, was not obligatory upon her; and that complainant's action was barred by laches and limitation. The chief controversy in the suit was whether Nicholas Ball could devise to his son such an interest in the land as would give the son a right to maintain the suit. The court held that the contract right of Nicholas Ball to demand a reconveyance of the land for breach of the condition as to its uses, would pass by his will and that plaintiff, therefore, could maintain his suit; but refused to require the defendant to re-convey the land, because it would work a forfeiture of the title, and refused to decree specific performance because it appeared that when Milliken bought the property it had been used by Hooper for purposes other than those mentioned in his deed and the plaintiff had lost the right to specific performance of the condition by permitting breaches thereof by Hooper, an intermediate grantor of the property. But the alternative relief prayed for was granted, namely, an injunction against the further use of the property for purposes other than those named in the original deed. In discussing the question whether the interest retained in the land by Nicholas Ball was devisable to his son,

the complainant, the court discussed the legal restrictions contained in the deed and the rights of Nicholas Ball, the original grantor, under it, and said that *if it was necessary* in the determination of the case, *authority would not be lacking* to warrant the court in finding that the provision contained in the deed was a condition, that there remained in Nicholas Ball a right of re-entry for breach of the condition, and that according to some authorities the interest of Nicholas Ball remaining in the land was one which he could devise at common law. The court said that it clearly appeared by the deed to Hooper that it was the intention of the parties that upon a breach of the provisions restricting the use thereof the property should return to the "grantor, his heirs, executors and assigns," and in addition to the right to re-enter, the grantor obtained for himself, his heirs, executors and assigns, the right to demand a reconveyance in case of any violation of the provisions in the deed. The court said that the provision for reconveyance established the intention of the parties that the land should return to the grantor upon a violation of the provision, and the restriction could well be construed to create a condition. We interpret the language of the court to mean that the provision for a reconveyance of the property was equivalent to words of forfeiture or defeasance; or at least indicated that it was the intention of the parties that the land should revert. To further maintain its conclusion that the interest of Nicholas Ball could be devised to his son under the laws of Rhode Island, the court said that by the provision for reconveyance Ball retained an equitable interest in the land which might be devised under general laws of 1896, chap. 201, sec. 23. according to the decision the complainant had both the legal title and an equitable interest in the subject matter of the suit. The discussion of the legal effect of the stipulation in the deed was not carried into a decision of the case and is not made a point in the syllabus. It was not necessary to a decision, and we consider it merely *obiter dictum.* We do not think that an agreement to re-convey is tantamount to words of reverter or would operate as a divestiture of the title. An agreement to convey is not a conveyance, and cannot operate

as a forfeiture of the title of a person who agrees to convey it. The words used in the stipulation in the deed under consideration does not indicate that a forfeiture was intended. Upon failure to build it is stipulated that Holbert shall receive back the purchase money which he has paid. If he had paid more than the original $500 he would be entitled to receive that back also. He was not to forfeit his money. Should the value of the property depreciate, no doubt he would be glad to receive back the purchase money paid. In such case what would he forfeit? What would be his loss? To forfeit is to incur loss through some fault, omission, error or offense. It is synonymous with "loss." To hold that this agreement for reconveyance upon tender of the purchase money paid is a forfeiture or divestiture would be to violate the rule that the language of such provisions must be construed most strongly against the creation of a condition subsequent. It must be clear and certain that a defeasance was intended. "It must be so nominated in the bond." The parties have agreed that the title shall be transferred in a specific way, by deed, and not by defeasance or reverter. Shall we make a new contract for them? In determining whether a stipulation is a condition subsequent or something else, the presence or absence of a clause providing for re-entry by the grantor or for the forfeiture of the estate for a breach is very important. It is an important index of the intention of the parties. *Koch* v. *Streuter*, 232 Ill. 594. Although such a clause is not always indispensable it is always important as evidence of the intention to impose a condition, and will make certain that which in its absence is left open to construction. *Druecker* v. *McLaughlin*, 235 Ill. 267. "A covenant or condition, to suffice as the basis of a forfeiture clause in a contract, must be certain, definite, and unequivocal in meaning." *Peerless Carbon Black Co.* v. *Gillespie*, 87 W. Va. 441, 105 S. E. 517. However, in deeds on condition for maintenance and support of the grantor, a clause of re-entry is not essential to the right of rescission for non-performance of the condition. *Carter* v. *Reserve Gas Co.*, 84 W. Va. 741. From an inspection of the deed it is evident that it was carefully prepared by one learned in the law and an expert draftsman

and if it was the intention of the grantor that there should be a reverter of the title or a forfeiture of the estate if the building was not erected, then there should have been plain, unequivocal and certain words to that effect. Following the well established rule of construction, we are constrained to hold that the provision under consideration did not operate as a reverter or defeasance of Holbert's title, and therefore, there was no right of entry in the plaintiff upon his tender of the principal sum paid and his demand for a reconveyance of the property in accordance with the conditions, considerations and requirements of the terms of said deed executed on the first day of September, 1916. The parties agreed upon the procedure by which the plaintiff could re-posses himself of the title and property in the event of a failure to build. This was the method they provided, and we cannot read into their agreement something which was not intended, and declare a forfeiture or reverter in the face of the well established rule above referred to. We are cited to *O'Brien* v. *Wagner*, (Mo.,) 7 S. W. 19; *H. R. C. Co.* v. *Ennis-Colvert* (Tex.) 56 S. W. 367, and *Papst* v. *Hamilton* (Cal.) 66 Pac. 10, as sustaining the proposition that the clause under consideration is a condition subsequent which defeats the estate upon breach. An inspection of these cases will disclose that there were express words used in the deeds, such as ''under penalty of forfeiture of the estate''; ''then title in possession shall *ipso facto* revert''; and ''the estate conveyed is conditional, and on the land being adandoned for such purpose all rights thereto *revert* to the grantor.'' They but accentuate the rule that apt words clearly evidencing the intention of the parties and leaving no ground for a different construction, must appear in order to work a forfeiture *ipso facto*. *Clapp* v. *Wilder*, 176 Mass. 333, cited, is not very persuasive, three of the judges having joined in a strong dissenting opinion written by Judge Morton. Contra, see *Post* v. *Weil*, 115 N. Y. 361; 12 Am. St. Repts. 809.

In *Rooks Creek Evan. Lutheran Church* v. *First Lutheran Church*, cited, the deed was: ''on condition that said church be and remain connected with the Haughes Lutheran Synod.'' The grantee was not at the date of the deed, and never after-

wards became, connected with the Haughes Lutheran Synod. The court held that the principal consideraion upon which the title was conveyed was grantee's connection with the Haughes Synod; that the words created a condition; that the subject matter and circumstances coupled with lack of any other adequate remedy impelled a holding that the deed was upon condition the non-performance of which defeated title.

We do not think that failure of defendant to build as stipulated in the deed automatically defeated his title and caused it to revert to plaintiff; and therefore there was no right of re-entry in plaintiff at the time of the institution of the suit, and he could not maintain an action of ejectment under sec. 16, chap. 93 of the Code. It is unnecessary to consider the other assignments of error.

The judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed; verdict set aside; remanded.*