# CHARLESTON.

O. J. HUNTER v. NORFOLK & WESTERN RAILWAY CO.

(No. 5110)

Submitted April 29, 1925.    Decided May 19, 1925.

1. RAILROADS—*Failure to Maintain Station Buildings on Land Conveyed to Company, Held Not Ipso Facto to Work Reversion of Title.*

    It was stipulated in a deed of two lots to a railroad company that they were to be used for station purposes; that buildings necessary therefor should be erected on part of the lots; and that in case the company abandoned the property for station purposes, the title thereto should revert to the grantor. Held: the failure of the railroad company to maintain station buildings thereon did not *ipso facto* work a reversion of the title. (p. 188).

    (Railroads, 33 Cyc. p. 224).

2. SAME—*Reversion of Title for Failure to Use Land for Station Purposes Prevented.*

    The evidence shows that a part of this property has been used continuously for the purpose of unloading freight in carload lots, and that this use is necessary for station pur-

poses. Held: there has been no reversion of the title to the grantor. (p. 190).

(Railroads, 33 Cyc. p. 224).

3. DEEDS.

·Point 1 in the syllabus of *Sands* v. *Holbert,* 93 W. Va. 574, followed and applied.

LITZ, Judge dissenting.

(Deeds, 18 C. J. § 381).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, McDowell County.

Action by O. J. Hunter against the Norfolk & Western Railway Company. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*F. M. Rivinus, Lucian H. Cooke,* and *Strother, Sale, Curd & Tucker,* for plaintiff in error.

*Howard & Howard,* and *Poffenbarger, Blue & Dayton,* for defendant in error.

HATCHER, JUDGE:

This is an action of ejectment brought in the Circuit Court of McDowell County, in which the plaintiff seeks to recover from the defendant the possession of two certain lots situate at Rhoderfield. From a judgment for the plaintiff, on a directed verdict, the defendant has brought the case here on error.

The lots in question were conveyed to the defendant by W. R. Iaeger and wife, by deed of April 9, 1892, which contained the following clause:

"The said two tracts, pieces or parcels of land being conveyed for station purposes, it is expressly understood that the said railroad company shall erect upon a part of the property hereby conveyed, necessary buildings to be used for said purposes and that in case the said railroad company or its successors shall abandon the said real estate for station purposes, that the title to the same shall revert to the said W. R. Iaeger or his heirs."

Shortly after the conveyance, a station building was erected on one of these lots, where it remained until 1909, when it was torn down. Since then, the station for Rhoderfield has been maintained one-fourth of a mile distant from this property. The railway company has kept tenants constantly in houses on one of the lots from the date of the conveyance, and from 1909, has used the other continuously for the purpose of unloading carload shipments from a siding which adjoins the lot.

On September 15, 1922, W. R. Iaeger and wife executed a deed to the plaintiff quit-claiming title to these lots. After referring to the conveyance to the defendant, this deed contained the following recital:

> "Whereas, more than ten years ago the said Norfolk and Western Railroad Company tore down and removed the building erected on part of said real estate for station purposes, thus abandoning the said property for the purpose for which it was conveyed to it, and by the covenants and agreements contained in the deed above referred to, the title thereto reverted to the said W. R. Iaeger."

The theory upon which the plaintiff seeks to recover is expressed in this recital.

A careful examination of the reversionary clause in the deed to the defendant discloses, that while there was an express undertaking by the railroad company to erect necessary buildings to be used for station purposes on the lots, yet the reversion of the title did not depend on the erection or the maintenance of station buildings. The title reverted only in case the railroad company "abandon the said real estate for station purposes."

Under the stipulation in the deed, there is no question but what defendant became obligated to construct station buildings on a part of these lots. There is no question but that the agreement contemplated the maintenance of such buildings thereon. Upon the destruction of the old station building in 1909, a right of action immediately accrued to the grantor. He might have sought either specific performance or damages for failure of consideration. But the removal

of the station building did not *ipso facto* work a reversion of the title. That would take place only when the lots were no longer used for *station purposes.*

The railroad company contends that at no time has it ceased to use the property for station purposes, and therefore, the title to the lots has not reverted to the grantor. The evidence of the use by the railroad company of the property since 1909 is not disputed. L. C. Creakman testified that he was roundhouse foreman for the defendant at Eckman; that he had been roadmaster for the defendant from 1912 to 1922, and was familiar with the lots in question, and the use thereof by the defendant; that a sidetrack was necessary for station purposes "for unloading carload shipments —frequently less than carload shipments"; that there is a siding at Rhoderfield which adjoins the old station lot; that there is no other place in Rhoderfield for unloading freight in carload lots except on the siding "up there next to that old station lot", and that this lot has been used by defendant for station purposes in unloading freight from the siding continuously since the old station was removed.

This witness has had long experience in railroad affairs. He is competent to say what constitutes a use for station purposes. He states that this lot is necessary for, and has been used for station purposes. In disregard of this positive, uncontradicted evidence by a witness competent to testify, can a court arbitrarily say that the use to which this lot has been put is not a station purpose? We think not, especially when we find that the evidence of this witness thereon is perfectly consistent with judicial definitions of depot, depot grounds, and station grounds.

> "A depot is a place where passengers get on and off the cars, and where goods are loaded and unloaded; and all grounds necessary or convenient and actually used for these purposes are included in depot grounds."

*Fowler* v. *Farmers etc. Co.*, 21 Wis. 78.

> "The grounds necessary or useful and used for the purposes of the freight and passenger business of the road, which includes all the business in which the public are interested, may properly be

called 'depot grounds.' This would include the
switching and making up of trains, and the use of
sidetracks for the storing of cars, and the place
where the public require open and free access to
the road for the purposes of business."

*Plunkett* v. *Minneapolis etc. Co.,* 79 Wis. 222.

"The territory required for this purpose, when
ascertained and set apart, constitutes what is
called depot and station grounds, and varies in
amount usually according to the location and
amount of business to be done, and the necessities
and convenience of the company and public in
doing their business at the station. These grounds,
as we have seen, are not required to be fenced
by the company, and of course cannot be made to
extend from station to station. They are usually
quite limited in extent, and are intended to fur-
nish sufficient space for construction of sidetracks,
offices, passenger depots, freight-houses, and other
buildings, ways, and yards suitable and conven-
ient for the speedy and safe reception and dis-
charge of passengers and freight, and the storage
of cars and other property belonging to the com-
pany and persons doing business with the road."

*McGrath* v. *Detroit etc. Co.,* 57 Mich. 555.

Mr. Creakman testified that a sidetrack is necessary for
station purposes in order to unload freight in carload lots,
and frequently less than carload lots. No one can question
this statement. There must be then, some place provided
by a railroad company upon which such freight can be un-
loaded and to which the public has a right to come for freight.
If an unloading place is necessary in the use of the sidetrack,
then such place is as much a part of the necessary station
grounds as is the siding itself. If the use of a siding is a
use for station purposes, it must necessarily follow that the
use of a lot to unload freight from the siding is also a use
for station purposes.

This view is strengthened by the attitude of the grantor
of the defendant in that from 1909 to 1922, he acquiesced in
the use made by the defendant of this property. During all
that time, there is no intimation that he did not consider
such use a use for station purposes. Having conveyed the

property expressly for station purposes, it is passing strange that he should have permitted the company to retain the use thereof during that period, unless he recognized that use to be consistent with the stipulation in the deed. It is our duty to construe a reversionary clause most strongly against the grantor and to prevent, if possible, the defeasance of the estate.

> "The law favors the vesting of estates, and is adverse to their destruction after they have been vested; and hence, the firmly established rule is that courts will always construe a stipulation in a deed so as to prevent either the nonvesting or defeasance of an estate conveyed thereby, if possible."

*Sands* v. *Holbert,* 93 W. Va. 574.

Construing this stipulation favorably to the defendant, we are compelled to hold that since its deed thereto, the defendant has never ceased to use a part of these lots for station purposes, and that there has been no reversion thereof. The plaintiff is, therefore, without title to maintain this action.

Holding as we do on this question, we consider it unnecessary to discuss the other assignments of error.

The judgment of the lower court will therefore be reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*