HODGES v. WESTERN UNION TELEGRAPH COMPANY.

(Filed October 27, 1903.)

1. EMINENT DOMAIN — *Telegraphs — Easements — Damages — Railroads.*

A telegraph line along a railroad and on the right of way thereof is an additional burden upon the land, for which the land owner is entitled to just compensation.

2. EVIDENCE—*Eminent Domain—Telegraphs—Railroads.*

In an action by a land owner against a telegraph company for damages because of the erection of poles on the right of way granted to the railroad, evidence that the telegraph line was necessary to the operation of the road is immaterial.

3. LIMITATIONS OF ACTIONS—*Eminent Domain—Telegraphs—The Code, sec. 155, subsec. 3—Acts 1895, ch. 165—Trespass.*

An action against a telegraph company for the erection of poles on the land of the plaintiff, if brought within three years of the trespass, is not barred by limitation.

4. EMINENT DOMAIN—*Trespass—Damages—Telegraphs.*

In an action against a telegraph company for the erection of poles on the land of plaintiff, it is error to instruct that in addition to permanent damages the land owner was entitled to recover for damages to crops.

ACTION by G. R. Hodges and wife against the Western Union Telegraph Company, heard by Judge *H. R. Bryan* and a jury, at May Term, 1903, of the Superior Court of HARNETT County.

On January 15, 1883, the plaintiff executed to the Wilmington and Weldon Railway Company a deed reciting that said company contemplated building a branch line of its railroad, etc., and that "for and in consideration of the benefits to be derived from the building of said branch road, and

133——15

in further consideration of one dollar," the plaintiff grants
to the said company, "its successors and assigns all the fol-
lowing described rights of entry, rights of way and other
rights, privileges and easements, that is to say, a free and per-
petual right of entry, right of way and easement at any and
all times, for the purpose of surveying, building, construct-
ing, operating, altering, improving and repairing the said
branch line of railroad, its depots, station houses, ware-
houses, bridges and all necessary erections, and for all other
purposes necessary and convenient for the use, operation and
business of the said branch road in, through and over a strip
of land one hundred and thirty feet wide, that is to say,
measuring sixty-five feet on each side of, and at right angles
to, the center of track or road-bed of the said branch line,
etc." Pursuant to this grant the company surveyed, located
and built the branch line of road over the plaintiff's land,
and operated the same until its assignment of its property
and rights to the Atlantic Coast Line, and said assignee has
at all times since maintained and operated said railroad.
During the year 1888 the said company constructed a tele-
graph line with one wire and small poles over the line near
the road-bed ditch, and a year or two afterwards the defend-
ant placed another wire on the said poles. On June 1, 1880,
the Wilmington and Weldon Railway Company entered into
a contract with the defendant company whereby it was agreed
that "the railroad company, so far as it legally may, and to
the extent of its corporate power, hereby grants and agrees
to insure to the telegraph company the right to keep, maintain
and operate its existing line of telegraph, and to construct,
maintain and operate such additional lines and wires as it
may elect on and along the line and bridges of the railroad
company's right of way, and upon any branches and exten-
sions thereof, etc. The telegraph company agrees to pay "for
the occupancy of the said right of way," fourteen dollars

per mile. There are certain other stipulations not material to this controversy. "The telegraph company agrees to maintain its line along said railroad in good order and repair and to set apart one wire for the business of the railroad company exclusively and for the local commercial offices maintained by it." The seventh clause of the agreement is in the following words: "Neither the terms of this agreement, nor any stipulation herein contained, shall have the effect of creating a covenant of quiet enjoyment, either express or implied, on the part of the railroad company and in favor of the telegraph company, or against the owner of the fee-simple of the land over which the railroad company has the right of way." The provisions of the contract are declared to extend "to all roads, branches and extensions now or hereafter owned or controlled by the railroad company," and to continue for twenty years.

On March 23, 1887, the Wilmington and Weldon Railway Company entered into another contract with the defendant in regard to the erection and maintaining of telegraph poles and wires along said branch road. This contract continued for one year. On March 23, 1888, the said railway company entered into "a supplemental agreement" with the defendant company. By this agreement "the railroad company, for and in consideration of three thousand seven hundred and eighteen dollars, lawful money of the United States, to it in hand paid by the telegraph company, the receipt whereof is hereby acknowledged, has bargained, sold, assigned, transferred and set over unto said telegraph company, its successors and assigns, all of said line of poles and wires between Wilson and Fayetteville, N. C., aforesaid, being altogether about seventy-one and a half miles of poles and seventy-one and a half miles of wire, more or less, together with all loops, insulators, brackets, fixtures and appurtenances thereunto belonging, and including all instruments, batteries, tools, machinery, appliances and office appurtenances and all telegraph material

now used and on hand for use in connection with said line, together with full right and license to maintain, operate, repair and renew said line upon and along the right of way of the railroad company. To have and to hold the same unto the telegraph company, its successors and assigns, to and for their use and behoof forever." The railroad company released the telegraph company from payment of the rental provided for in the contract of June 1, 1880. The provisions of the agreement between the parties dated June 1, 1880, except as herein amended, are declared to apply and extend to said railroad and telegraph line between Wilson and Fayetteville, and to all other rights and privileges owned and controlled by the said railroad company. Among the provisions set out in the contract of June, 1880, the telegraph company agrees that it will maintain its line along said railroad in good order and repair and to set apart one wire, and upon six months' notice to set apart a second wire, for the use of the railroad company. Certain other provisions in regard to the terms upon which the business was to be conducted are fully set out.

The plaintiffs allege that they are the owners of the tract of land in Harnett County, and that it is the same land over which they have granted to the railroad company a right of way as herein set out. They further allege that the defendant has caused to be placed in and upon said land, and extending across the same for the length of nearly a mile or more, a row of posts, and has sunk anchor wires from some of the posts into the ground, and has strung wires over and across said premises, and unlawfully and wrongfully continues to keep up and maintain the said posts and wires, going upon and over said land to attend to the same, and have already taken and appropriated the plaintiff's said land to its own use; the said posts and wires are an obstruction to the plaintiffs in the cultivation of their farm and the use of the same, interfering with the plaintiffs in the use of their farm imple-

ments and constituting a continual nuisance to these plaintiffs, and that the plaintiffs have not at any time given the defendant permission or conveyance to the easement or right or title to the said land, or the right to go over the same, nor any person for them.

The defendant company alleges that on March 23, 1888, the said Wilmington and Weldon Railway Company conveyed to the said telegraph company all of said lines and poles between Wilson and Fayetteville; the said telegraph company using and operating said lines of poles and wires partly for the use of the railroad company, in the operation of its trains and in the necessary maintenance and conduct of its line of railroad; and the defendant alleges that the same is not only expedient and necessary, but the right to construct said line was conveyed to said railroad company and by it to the telegraph company. The defendant company admits that it continues to keep up and maintain said poles and wires, but denies that it does so wrongfully and unlawfully.

The plaintiff testified that in November, 1899, the defendant built an entirely new line, with new poles, wires and fixtures, cross-arms, etc. Those poles were about eighteen feet high, cross-arms about ten feet long, with eight or ten new wires, and this line was located about twenty feet from the original line in the plaintiff's farm. The line includes a space about fifteen feet wide through the plaintiff's land. The original line constructed on the ditches or near them did not interfere with the cultivation of the land. The defendant is doing an interstate business and runs these lines from New York to Dunn, and to cities south as far as Jacksonville. The defendant has an office in Dunn not used for railroad purposes, but which is used entirely for commercial purposes. There is one wire which is used by the railroad company in its business in a separate office from the defendant's commercial office. The other wires on this line are through wires,

and not connected with either office at Dunn. The plaintiff rested and the defendant introduced the contracts hereinbefore set out.

The defendant introduced J. A. Spiers, who testified that he was agent of the Atlantic Coast Line Railway Company; that there was but one line of poles and they are used by the railroad company, and it is the only line. The defendant asked the witness this question: "Is the use of a telegraph line necessary for the safe and proper operation of a railroad?" Plaintiffs object, objection sustained and the defendant excepted. The issues submitted by the Court were:

1. What permanent damages have the plaintiffs sustained by reason of the defendant's appropriation of their land as described in the complaint?

2. Is the plaintiffs' action barred by the statute of limitations?

The defendant asked his Honor to charge the jury that if they believed the evidence, the plaintiffs were not entitled to recover. This was refused and defendant excepted.

Defendant also asked his Honor to charge the jury that from their own knowledge and experience they had a right to find that a telegraph line was necessary for the safe, proper and convenient operation of a railroad, and if they so found, and also found that the plaintiffs made the deed to the Wilmington and Weldon Railroad Company of June 15, 1883, and the railroad company used the said line under the contract made with the defendant company, then the right to construct and use said right of way for such purposes was granted by said deed. And the fact that the telegraph company also used it imposed no additional burden upon the plaintiffs' land, and they must answer the first issue "Nothing." His Honor declined to so charge and the defendant excepted. The defendant further asked the Court to charge the jury that the plaintiffs' cause of action was barred by

the statute of limitations. This was also refused, and the defendant excepted. His Honor charged the jury that under the contracts between the railroad and the defendant in this case, and inasmuch as the plaintiffs had at all times been in the actual possession of the land over which the defendant's line is now located, the defendant's line constituted an additional burden on the plaintiffs' land, for which the plaintiffs were entitled to just compesation. The defendant excepted.

His Honor further charged the jury, at request of the plaintiffs, that the plaintiffs were entitled to the possession of the land as against the railroad company (that is, the right of way), except that the railroad company had the right to the actual use of so much only thereof as is necessary for the operation of its road and to protect itself against contingent damages.

His Honor charged the jury that they should assess the permanent damages caused by the erection of the line, and for the land appropriated by the defendant, also such damages as the plaintiffs had sustained, if any, within the past three years, to the crops on the land over which the defendant's line was located. His Honor further charged that the burden was on the plaintiffs to satisfy the jury that the plaintiffs were damaged at all, and, if damaged, in what amount, and that the jury were the judges of the facts, and not the Court; that they were also the judges as to the amount of damage the plaintiff sustained. There was no exception to this latter part of the charge. There was a motion for a new trial for errors and refusing to admit the evidence as set out, for failure to give charges as asked for by the defendant, and for giving the charges excepted to.

Upon refusal to grant a new trial the defendant appealed.

*Stewart & Godwin*, for the plaintiffs.
*Rose & Rose*, for the defendant.

CONNOR, J. (after stating the facts).  The defendant admits the entry upon and appropriation of the land, the fee of which is in the plaintiffs, and seeks to justify such entry and appropriation under the contract made with the railroad company.  The decision of this contention is dependent upon the proper construction of the grant made by the plaintiffs to the railroad company.  It is well settled by this and other Courts that "the right of way of railroad companies is by judgment of condemnation made subject to occupation where and only where the company finds it necessary to take the actual possession in furtherance of the ends for which the company was created.  The damages are not assessed upon the idea of a proposed actual dominion, occupation and perception of the profits of the whole right of way by the corporation, but the calculation is based upon the principle that possession and exclusive control will be asserted only to so much of the condemned territory as may be necessary for corporate purposes, such as additional tracks, ditches and houses to be used for stations and section hands.  Unless the land is needed for some such use, the occupation and cultivation by the owner of the servient tenement will be disturbed only when it becomes necessary for the company to enter to remove something which is dangerous to the safety of its passengers." *Blue v. Railroad,* 117 N. C., 644; *White v. Railroad,* 113 N. C., 610; 37 Am. St. Rep., 639; 22 L. R. A., 627; *Shields v. Railroad,* 129 N. C., 1; *Phillips v. Tel. Co.,* 130 N. C., 514; 89 Am. St. Rep., 868; *Eels v. Telephone and Telegraph Co.* (N. Y.); 25 L. R. A., 640; 5 Am. El. Cases, 92.  It is also said that "when the fee remains in the original proprietor, it is immaterial how the public (or in this case, the corporation) acquired an easement over the land, whether by condemnation or by dedication.  It is only for the use of ordinary travel, such as we are accustomed to see on streets or highways.  In case the proprietor dedicated the land, it

was for no other purpose, and if it was condemned, his damages are assessed with no other view." *Railroad v. Hartley,* 67 Ill., 439; 16 Am. Rep., 624.

"The proceeding by which land is acquired by the exercise of the right of eminent domain amounts to a statutory conveyance of the same to the public or the corporation, and there is no distinction between such a conveyance and a voluntary conveyance made for a public use. By proceedings *in invitum* the statute which authorizes the acquisition constitutes the contract between the citizen and the public, and when the interest has once been acquired it cannot be changed or enlarged." *Story v. N. Y. El. Road,* 90 N. Y., 172; 43 Am. Rep., 146.

Unless, therefore, there is found in the deed of the plaintiffs granting the easement to the railroad company language indicating a purpose, or operating to pass a larger or more extended right or easement than that which would have been acquired by judgment in condemnation proceedings, we must resort to the principles and authorities applicable to rights acquired thereby to define and fix the rights of the parties to this appeal.

It will be observed that the only consideration upon which the grant is founded is "benefits to be derived from the building of the said branch road." The language of the deed is clear and comprehensive. A "right of way and easement" is granted. These are apt and appropriate words for that purpose. The easement is for the purpose of "surveying, building, constructing, operating, altering, improving and repairing" the said branch road. We are of the opinion that this language accurately describes the right or easement which the company would have acquired by condemnation proceedings. It is evident that the deed was drawn by a careful, skillful draughtsman, anxious that all parties should know and understand the legal effect of the instrument. The company, by

the terms of this grant acquired the right to erect and uses so far as was reasonably necessary and convenient for the safe operation of the road and the engines and cars used thereon, a telegraph line, including, of course, the right to place poles in the ground and string wires thereon. We concur in the language of the Court of Appeals of Maryland in the case of *American Telegraph and Telephone Co. v. Pearce,* 71 Md., 535; 7 L. R. A., 200: "We entertain no doubt whatever as to the right of a railroad company to construct on and over its right of way a telegraph or telephone line for its use in the operation of its road and dispatch of its business; and it may do this by itself or may employ another company to do it, or may do it conjointly with another company. If this line is in process of construction or is about to be constructed over the right of way of this railroad company, in good faith, for the use and benefit of the latter in the operation of its road, and to facilitate its business, or is reasonably necessary for that purpose, the land owners have no ground of complaint, because such use of their land is within the scope of the original easement for which they have already received compensation. But, on the other hand, if this is not the motive for its construction, and the main object in constructing it is to establish an extensive line of telegraph and telephone communication through this and other States, for general commercial purposes, for the use and benefit of the defendant, and such a line is not reasonably necessary for the purposes of the railroad, then it will be a new easement, and put a new additional burden upon the land, for which the owners are entitled to compensation." Joyce on Electric Law, sec. 233. This Court has clearly held in *Phillips v. Tel. Co.,* 130 N. C., 513, that "telegraph lines along a railroad and on the right of way of the railroad is an additional burden upon the land, for which the land owner is entitled to just compensation."

This opinion is fully sustained by the best considered authorities in this country.

In *Nichol v. N. Y. & N. J. Tel. Co.,* 42 At. Rep., (N. J.), 583; 72 Am. St. Rep., 666, it is said: "The argument to support the proposition that the right to construct and maintain a telephone line for common public use is within this easement is that the structures are required for the exercise of the right of the electric current which thus travels along the highway. But the resemblance between the use and that ordinarily enjoyed under the easement scarcely goes beneath the words by which it may be described. In reality the electric current does not use the highway for passage. It uses the wire, and would be as well accommodated if the wire were placed in the fields or over the houses. The highway is used only as a standing place for the structures. Such a use seems to us to be so different from the primary right of passage as to be essentially distinct. * * * We therefore think that the right now under consideration is not within the public easement, and can be acquired against the consent of the private owner of the fee only by condemnation under the power of eminent domain."

In *Broome v. N. Y. & N. J. Tel. Co.* (N. J.), 5 Cent. Rep., 814, it is held that in order to justify a telephone company in setting up poles in the highway it must show that it has acquired the right to do so, either by consent or by condemnation from the owner of the soil."

In *W. U. Tel. Co. v. Williams,* 86 Va., 696; 8 L. R. A., 429; 19 Am. St. Rep., 908, the Court says: "That the erection of a telegraph line upon a highway is an additional servitude is clear from the authorities. That it is such is equally clear upon principle, in the light of the Virginia cases. If the right acquired by the commonwealth in the condemnation of a highway is only the right to pass along over the highway for the public, then, if the untaken parts of the land are his

private property, to dig up the soil is to dig up his soil; to cut down the trees is to cut down his trees; to destroy the fences is to destroy his fences; to erect any structure, to affix any pole or post in and upon his land, is to take possession of his land; and all these interfere with his free and unrestricted use of his property. If the commonwealth took this without just compensation it would be a violation of the Constitution. The commonwealth cannot constitutionally grant it to another."

From these authorities and the reason of the thing we conclude that the railroad company only acquired the right to erect and use such telegraph poles and lines as are reasonably necessary for the purpose for which the easement was granted. This seems to have been the construction put upon the contract by the company. We find that in the contract of 1880 there is a careful reservation of the rights of the company. The uncontradicted testimony shows that in 1888 the railroad company, abandoning all idea of joint ownership or joint operation of the telegraph line, conveys, assigns and sets over to the defendant company, in consideration of a sum of money named therein and of certain covenants and agreements contained in the contract, all of the poles and wires upon such right of way between Wilson and Fayetteville, N. C. Thereafter, in 1899, the defendant company erects upon the right of way an entirely new line, placing its poles, much larger than those used by the railroad company, about twenty feet from the original line, and placed upon those poles cross-arms about ten feet long with eight or ten new wires. It is evident that from the position of the poles, the size of them and the larger number of wires used, that no such line is reasonably necessary for the enjoyment of the easement granted to the railroad company. We can put but one construction upon the deed of March, 1888. It was a sale of the property in the poles and wires and an attempt to confer

upon the defendant company a right to erect and maintain a line of telegraph poles and wires for general commercial purposes in connection with its line through this and other States. We cannot construe this into a reasonable use of the easement granted by the plaintiffs to the railroad company, but as an additional burden placed upon the plaintiffs' land. It is clear that the railroad company could not grant to the defendant company an easement. This could be done only by the owner of the soil. *Narron v. Railroad,* 122 N. C., 861; 40 L. R. A., 415. The only effect that the contract of March, 1888, could have was to give to the defendants, so far as the railroad's rights are concerned, a license or right to put its poles and string its wires over and along its right of way, not affecting in any manner the rights of the plaintiffs, the owners of the soil. This right, as was said in *Phillips v. Tel. Co., supra,* could have been acquired against the railroad company by condemnation proceedings, section 2210 of The Code, but would not have affected the rights of the plaintiffs. We therefore think that it was immaterial to inquire of the witness whether the use of a telegraph line was necessary for the safe and proper operation of a railroad. As we have seen, the use of a telegraph line was necessary for the purposes indicated, but the question whether or not this telegraph line was necessary is an entirely different one. We find no error in his Honor's ruling in that respect.

The defendant, however, pleads the statute of limitations in bar of the plaintiffs' action, and requested his Honor to instruct the jury that the action was barred. We think that his Honor was correct in declining to so charge. This action is not for trespass committed by the defendant in entering upon and breaking the plaintiffs' close. As was said in *Phillips v. Tel. Co., supra,* "The sole purpose of this action is to recover compensation for the appropriation of the plaintiff's property by the defendant. * * * The plaintiff does

not seek to eject the defendant, nor to interfere in the slightest degree with the fullest enjoyment of the easement it claims. He does not threaten nor intend to annoy the defendant by a multiplicity of suits, but, on the contrary, he asks the Court, in the exercise of its equitable jurisdiction, to award him such permanent damages as will compensate him for the appropriation of the easement. This being done, the defendant ceases to be a trespasser, and will thereafter remain in the lawful enjoyment of the easement thus acquired. There is, therefore, no question as to whether the defendant shall have the easement, but simply whether he shall pay for it." These observations apply to this action. The plaintiffs demand permanent damages, and the issue submitted to the jury was directed to that inquiry. The appropriation which the defendant has made of the plaintiffs' land is in the construction of its poles and the stringing of its wires in November, 1899, and it is for this appropriation and the easement which will be acquired by the payment of the judgment in this action that the suit is brought. Three years have not elapsed between that date and the issuing of the summons in this action. The plaintiff does not seek to recover any damages for acts done by the defendant prior to November, 1899. We therefore think that the action is not barred by the statute of limitations. We think it unnecessary to discuss the other aspects of this question.

We note that his Honor charged the jury that in addition to the permanent damage caused by the erection of the line and for the appropriation by the defendant, the jury should also assess such damages as the plaintiffs had sustained, if any, within the last three years, to the crops on the land over which the defendant's line was located. This portion of the charge is erroneous, but we find no exception thereto taken by the defendant. Nor do we find any testimony upon which the jury could have assessed such damages. The only testi-

mony in regard to damages was that of the plaintiff Hodges, who placed the damage sustained at $5 per pole. We would be compelled to grant a new trial for this error, if excepted to, but it is well settled by numerous decisions of this Court that unless excepted to, a new trial will not be granted.

Let the judgment of the Court below be

Affirmed.