Hubert **OXFORD** III, and Joseph D. Johnson, Jr.

v.

**WILLIAMS COMPANIES, INC., et al.**

No. 1:99–CV–648.

United States District Court, E.D. Texas, Beaumont Division.

June 29, 2001.

George Michael Jamail, Wayne A. Reaud, Reaud Law Firm, Beaumont, TX, H. Jerome Gette, Brad Eugene Brewer, Zelle, Hoffman, Voelbel, Mason & Gette, Dallas, TX, Gilbert Irvine Low, Orgain, Bell & Tucker, Beaumont, TX, Nels J. Ackerson, James R. Baarda, David A. Cohen, Cecilia Fex, The Ackerson Group, Washington, DC, Henry J. Price, Price, Potter, Jackson & Mellowitz, Indianapolis, IN, Marc Fiedler, Roger C. Johnson, Koonz, McKenney, Johnson, DePaolis & Lightfoot, Washington, DC, Richard M. Hagstrom, John B. Massopust, Zelle, Hofmann, Voelbel, Mason & Gette, Minneapolis, MN, for plaintiffs.

Lawrence Louis Germer, Germer & Gertz, Beaumont, TX, William Robert Pakalka, Gerard G. Pecht, Anne M. Rodgers, Stephen K. Carroll, Fulbright & Jaworski, Houston, TX, Fred Lee Butler, Adams & Reese, Houston, TX, David Handzo, Elizabeth Appel Blue, Jenner & Block, Washington, DC, Kevin P. Gallagher, Thomas F. O'Neill, III, MCI Worldcom, Inc., Washington, DC, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiffs, Hubert Oxford III and Joseph D. Johnson, Jr., brought this purported class action suit in Texas state court attacking the creation of a fiber optic cable network by the primary defendant, Williams Companies, Inc., and subsequently sold to MCI WorldCom in 1995. Defendants have filed motions for summary judgment, and the plaintiffs have filed a motion to dismiss without prejudice. FED.R.CIV.P. 41(a)(2). The court, having reviewed the motions and responses on file, and having heard oral argument by counsel, is of the opinion that the defendants' motions (which will be discussed together in this opinion as if they were one motion) be GRANTED and the plaintiffs' motion be DENIED.

### I. Background.

The plaintiffs' original complaint was filed in the 172nd Judicial District, Jefferson County, Texas, on September 3, 1999, and was removed to federal court on October 1, 1999. The complaint attacked the creation of a fiber optic cable ("FOC") network which was built by the primary defendant ("Williams") and sold to MCI WorldCom ("MCI") in 1995.

The network was built along easements and rights of way procured from various railroad and utility companies in Texas and in other states. The plaintiffs contend that the original interests in land were limited to railroad and utility placement with no rights extending to the installation of the FOC network. Oxford and Johnson own land in Jefferson County, Texas. They originally sought to represent a proposed class of all land owners in the United States whose land was subject to an easement held by a railroad, pipeline, energy, or other utility company, which Williams allegedly used without obtaining consent or paying compensation for installation and maintenance of the FOC network.

Plaintiffs asserted causes of action for trespass, unjust enrichment, and slander of title and property, and sought declaratory relief concerning the rights to land in which they own interests. Defendants timely removed the action to federal court. Plaintiffs' attempt to remand was denied by this court in a memorandum opinion with an accompanying order on February 16, 2001. That order also dismissed two fraudulently joined defendants, and *sua sponte* denied class certification. The plaintiffs petitioned the Fifth Circuit Court of Appeals for leave to file an appeal of the denial of class certification under FED. R.CIV.P. 23(f). The Fifth Circuit denied the petition. Oxford and Johnson remain the sole plaintiffs in the lawsuit.

During the one year and nine months this suit has been pending, defendants repeatedly requested plaintiffs to provide documentation in discovery to identify which properties were the subject of the plaintiffs' claims, and to prove the existence of FOC on any of their properties. Neither plaintiff has ever done so. This court entered an order to all parties to provide initial disclosure under FED. R.CIV.P. 26 not later than thirty days after the court's entry of an order ruling on motion to remand. That date was March 8, 2001. To date, defendants Williams Companies and WorldCom Companies have timely made such disclosures, while plaintiffs have not.

In their summary judgment motion, defendants show that there is no real estate in the real property and tax records of Jefferson County which belong to the plaintiffs and which have had FOC installed. Defendants presented the same summary judgment evidence during a hearing

conducted with counsel for plaintiffs and this court on May 9, 2001. At that hearing, plaintiffs' counsel agreed there was no property owned by plaintiffs with FOC installations on them and that the court should dismiss the claim without prejudice. The sole disagreement between plaintiffs and defendants on that issue is whether to dismiss the case with or without prejudice. No disclosure was made by plaintiffs' counsel regarding the additional tract of land identified for the first time in plaintiffs' response to the defendants' motion for summary judgment.

Defendants here seek summary judgment as a matter of law, and seek to dismiss the case with prejudice. The Williams Companies defendants filed their motion for summary judgment on May 4, 2001. The WorldCom defendants, in their motion for summary judgment, incorporated the motion filed by the Williams Companies. On May 23, 2001, Oxford and Johnson filed a motion to dismiss without prejudice under FED.R.CIV.P. 41(a)(2), accompanied by plaintiffs' brief in support of motion to dismiss and in opposition to the Williams defendants' motion for summary judgment. The court accepts that pleading for both of its intended purposes.

## II. Defendants' Motion for Summary Judgment.

### A. Standard on Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED.R.CIV.P.

56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A genuine issue exists when, in the context of the entire record, a reasonable fact finder could return a verdict for the non-movant. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *See Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d 538 (1986); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case. Unsubstantiated assertions of an actual dispute do not suffice. *See Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553–54). Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to

show that summary judgment is inappropriate. *See Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir.1997). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Id.* (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14).

## B. Analysis.

One of the defendants' early requests for discoverable material was forwarded by letter on February 21, 2000, and was specifically worded to ask the plaintiffs to "furnish us with property descriptions of the land owed by Mr. Oxford and the land owned by Mr. Johnson that is crossed by a fiber optic cable or a telecommunications cable owned or operated by any of the defendants." The response by plaintiffs' counsel on March 3, 2000, failed to provide any property descriptions or identify any specific property crossed by FOC which was owned by either of the two plaintiffs. The response did not refer to Mr. Oxford's claims at all. It did refer to one, otherwise unidentified, piece of land belonging to Mr. Johnson. Counsel opened his letter with the sentence, "Under Texas law, Mr. Johnson obtained rights in the land burdened by the easement to bring this lawsuit." The remainder of the letter in response discussed interests in rights up to the centerline of an easement which abuts a grantee's property.

Defendants have independent researched the real property and tax records of Jefferson County, Texas, on behalf of Oxford and Johnson, revealing four real properties in the name of Hubert Oxford III, either alone or with Cynthia C. Oxford, and three real properties in the name of Joseph D. Johnson, Jr., either alone or annotated "et ux.," or with Patsy Stelly Johnson. None of those properties are crossed with FOC installations. One property owned by Mr. Oxford abuts Phelan Avenue in the City of Beaumont. The property now comprising Phelan Avenue had previously been conveyed in fee for railroad company uses and subsequently conveyed in fee to the City of Beaumont. There is FOC laid under the median of the four-lane avenue. Additionally, one property owned by Mr. Johnson (which is apparently the property referred to by plaintiffs' counsel's letter of March 3, 2000) abuts an easement granted to a railroad for its use and for virtually unrestricted other development at the railroad's discretion, under which there is a FOC installation.

All of this information was related to the court and to plaintiffs' counsel by the defendants' filings in support of summary judgment. At the May 9, 2001, hearing, the same properties and conditions were identified by defendants' counsel. Counsel representing plaintiffs at that conference admitted that there was no ground on which to proceed in this case.

Plaintiffs' statement in opposition to summary judgment, however, raises two issues characterized as "material fact" precluding summary judgment. The first issue is that plaintiffs have identified for the first time a particular property alleged to belong to Oxford and across which plaintiffs allege there exists an FOC installation. The property is not one of those previously identified by defendants out of the Jefferson County tax and real property records. The second issue is that plaintiffs have more fully developed and briefed their theory that property purchased in the recent past which abuts existing railroad easements carries a present interest in the uses made of those easements whenever granted, up to the centerline of the easement.

### 1. The Virginia Oxford Property.

■ Plaintiffs now claim that the defendants' research of Mr. Oxford's property ownership, correct so far as it goes, is nonetheless incomplete. They have identified, for the first time, a property not listed in Hubert Oxford III's name but for which Mr. Oxford claims he is the lawful owner. That property is listed in the Jefferson County Appraisal District with the legal description of "Van Wormer FRC L11 L12 B58." The owner of record is listed as Virginia C. Oxford. By affidavit, Oxford claims that the property was passed down from earlier generations and, by his information and belief, ownership was passed to his father upon his grandmother's death. This affidavit is the sole summary judgment evidence supporting the plaintiffs' assertion of Oxford's ownership. Oxford has testified that he is unsure whether his mother, Virginia Cunningham Oxford, ever owned the property but that if she did, ownership would have passed to his father upon Virginia Oxford's death. He further states that he is one of five children of Virginia and (the elder) Hubert Oxford and that ownership of the property passed to him and his siblings in approximately 1997. Hence, he claims to be a part owner of the parcel.

Oxford's affidavit is insufficient summary judgment evidence to raise a question of material fact. The property's record owner is Virginia C. Oxford. Even if she is deceased, plaintiffs have presented no summary judgment evidence to show that title to the property has passed to Oxford. Oxford's affidavit amounts only to a statement of his personal information and belief.

Equally telling, the plaintiffs' motion simply makes a conclusory assertion, unsupported by any documentation whatsoever, that has previously unidentified property is "traversed" by FOC. An un-supported, conclusory claim cannot constitute a sufficient basis on which to establish a genuine issue of material fact.

### 2. The Johnson Property and the Strip and Gore Doctrine.

Plaintiffs argue that Texas common law supports their assertion that they have a valuable present interest in the allegedly easement-violating FOC installations by application of the so-called strip and gore doctrine.

■ Under Texas common law, absent an express reservations to the contrary in the deed, a conveyance of land abutting a railroad right of way conveys title to the center of the right of way. See State v. Fuller, 407 S.W.2d 215, 218 (Tex. 1966). The presumption of intent to convey the land comprising the right of way is not overcome by the fact that the deed describes the abutting land in terms of metes and bounds extending to the edge of the right of way. See Krenek v. Texstar North America, Inc., 787 S.W.2d 566, 569 (Tex.App.—Corpus Christi 1990, writ denied). However, the presumption does not apply if the grantor owns land abutting both sides of the strip. See Id. Also, the presumption does not apply if the strip is larger and more valuable than the conveyed tract. See Id.; Angelo v. Biscamp, 441 S.W.2d 524, 527 (Tex.1969).

Because the Virginia C. Oxford property discussed above cannot be considered as part of Oxford's property holdings for the purpose of this action, no strip and gore doctrine analysis is necessary as to that piece of land. The court notes, however, that defendants' reply to plaintiffs' response to motion for summary judgment adds clarity to the nature of the Virginia C. Oxford property. Although a railroad property runs adjacent to the Virginia C. Oxford property, the railroad property is

not an easement or right of way. Instead, the language of the grant, "[Grantees] do grant, sell and convey, unto the [Railroad] ... all that certain tract or parcel of land ...," is clearly language conveying the property in fee, not merely as an easement. Therefore, even if the Virginia C. Oxford property were to be properly included in this analysis, it would not be subject to the strip and gore doctrine.

Plaintiffs have admitted that Oxford's property abutting Phelan Avenue is not part of the subject matter of this claim because although Phelan Avenue contains FOC, it is owned in fee simple by the City of Beaumont.

■ Plaintiffs finally contend that one property owned by Johnson falls under the purview of the strip and gore doctrine, qualifying it under their complaint. That property consists of approximately .32 acres extending from Phelan or Old Sour Lake Road on the north to the Beaumont–Sour Lake & Western Railroad right of way to the south, all to the west of Keith Road. The Beaumont Airport abuts the railroad right of way immediately to the south. It is uncontroverted that FOC has been laid within the railroad right of way. However, plaintiffs have not established that such an installation fell inside the right of way grant, nor have they established that the FOC installation was made within any portion of the right of way that Johnson might conceivably lay claim to under the strip and gore doctrine in Texas.

The plaintiffs assert that under Texas law and the law of many other jurisdictions, a right of way or easement obtained for railway uses is limited solely to uses primarily associated with or benefitting the railroad as a railroad. Therefore, they contend, the easement may not be used for any other purpose, including the laying of utilities and things such as FOC, unless they are for direct support of the business

of running a railroad. In the context of an easement obtained by condemnation of private land, which is the context of the plaintiffs, that may be the case. For example, the plaintiffs rely on *AT & T v. Pearce*, 82 Me. 422, 19 A. 910 (Md.1889) for the proposition that a railroad could not erect commercial telephone or telegraph wires over an easement obtained for railroad purposes without permission of the grantor-property owners and without paying just compensation to them for the additional burden. However, that was in the context of an easement obtained by condemnation specifically for railroad purposes and is not the context of the grant examined here. This case does not involve the condemnation of land, but instead involves a private grant. The language of this grant is broad:

> This instrument is intended to convey to the grantee, its successors and assigns, an easement to the end and purpose that the grantee, its successors and assigns, may construct, own and operate over, along, and upon the premises above described, its railroad including its main line track or tracks, sidings, spur tracks, house tracks, depots, sections houses, water-tracks, out-houses, tool house, warehouse and each and every other structure or improvement of every character whatsoever which the railway company may now or hereafter desire to see fit to own, construct, operate, or maintain, on the said premises, and including the right to the railway company, its successors and assigns to grant to other persons, firms or corporations, the right to establish industries, ware-houses, platforms or other improvements thereon.

*See* defendants' motion for summary judgment, Affidavit of Robert D. Shaw. The plaintiffs contend that the phrase, "... the grantee, its successors and assigns, may

construct, own and operate ... its railroad ..." conditions the easement to relate solely to the construction and operation of railroad services. The court does not agree. The plaintiffs rely on *Chicago B & Q Ry. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897) for the proposition that a railroad company can only acquire land, by purchase or condemnation, for a "railroad purpose" as defined within its charter. *Id.* at 249, 17 S.Ct. 581. However, that statement is no more than the U.S. Supreme Court's reference to an observation made by the Illinois Supreme Court while determining the compensation value owed to a railroad whose easement is subsequently crossed by a public road right of way obtained by condemnation. It does not constitute a holding defining "railroad purposes." The plaintiffs thus also rely on *Ill. Cent. R.R. v. Wathen*, 17 Ill.App. 582 (1885), wherein a private grant was held not to extend to non-railroad uses. However, that grant included specific language restricting the easement it granted to "depot grounds and railroad uses only." That language is missing from the deed under examination here. The plaintiffs' own precedents support the alternative proposition that a private conveyance may grant a railroad a greater estate than that associated with just railroad operations. *See Hodges v. Western Union Tel. Co.*, 133 N.C. 225, 233, 45 S.E. 572 (1903) (holding that the court must determine rights in condemnation "[u]nless ... there is found in the deed of the plaintiffs granting the easement to the railroad company language indicating a purpose, or operating to pass a larger or more extended right or easement than that which would have been acquired by judgment in condemnation proceedings ..."). Thus, the court will examine the language of the grant deed.

■ Texas common law requires that the primary rule of construction of an instrument conveying an easement is that the intention of the parties be ascertained and given effect that such intention, especially that of the grantor, is to be gathered from the instrument as a whole under the "four corners rule." *See Peterson v. Barron*, 401 S.W.2d 680, 685 (Tex.Civ.App.—Dallas 1966, no writ). The question becomes: What is the meaning of the words of the instrument? If there is no ambiguity in the words, the instrument will be enforced as written. *Id.* Further, easement deeds must be construed most strongly against the grantor, and most favorable to the grantee, so as to confer the largest estate which a fair interpretation will permit. *Id.*

There is no ambiguity in the words of the deed granting the easement. Construing the language against the grantor and most favorably to the grantee, the words "*every* character whatsoever" and "right ... to grant to other persons, firms, or corporations the right to establish industries ... or *other* improvements" do not limit the grant to solely railroad uses nor to the railroad company itself. If the railroad was within its rights to confer the right to the defendants to install FOC as an "other" improvements, the defendants were within their rights to do so without fear of invoking an additional burden of consideration to a third party who purchases an abutting property.

■ The strip and gore doctrine also limits the potential interest an abutting property owner has in the adjacent easement to "the centerline" of the easement. Therefore, if Johnson were to have any interest in the railroad right of way abutting his property, it would end at the centerline of the right of way. The plaintiffs have shown no summary judgment evidence that any part of the FOC installation lies on the Johnson property side of

the centerline of the right of way, so as to fall within Johnson's putative interest.

The plaintiffs' letter of March 3, 2000, intimated Johnson had purchased this property in 1996 for the purpose of pursuing this litigation. It is unnecessary for this court to determine whether such a circumstance legitimately implicates the strip and gore doctrine of abutting easements. On the basis that the deed conferring the railroad right of way also grants non-railroad use rights to the railroad and third parties with whom the railroad might contract, and on the additional basis that the plaintiffs have shown insufficient summary judgment evidence to prove their claim, there is no issue of material fact sufficient to survive defendant's motion for summary judgment.

### III. Plaintiffs' Motion to Dismiss by Order of the Court Under Rule 41.

#### A. Standard for Voluntary Dismissal.

■ Federal Rule of Civil Procedure 41 governs dismissal of actions. Oxford and Johnson cannot unilaterally dismiss their action under Rule 41(a)(1) because the defendants have answered their complaint and have filed their motion for summary judgment. Further, defendants will not stipulate to a voluntary dismissal without prejudice. Therefore, plaintiffs turn to Rule 41(a)(2), which states:

> By Order of the Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance *save upon order of the court and upon such terms and conditions as the court deems proper.* [Rule governing entry of counterclaims omitted.] Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

*See* FED.R.CIV.P. 41(a)(2) (emphasis added).

■ Rule 41(a)(2) thus allows plaintiffs to freely dismiss their suits, subject to court approval, provided the dismissal does not prejudice any party. A district court may attach conditions to the dismissal to prevent such prejudice. *See Templeton v. Nedlloyd Lines,* 901 F.2d 1273, 1274 (5th Cir.1990); *Radiant Technology Corp. v. Electrovert USA Corp.,* 122 F.R.D. 201, 202 (N.D.Tex.1988). The mere prospect of a second lawsuit of the fact that plaintiff may obtain some tactical advantage are insufficient to establish legal prejudice. *See Reed v. Falcon Drilling Co., Inc.,* No. 99–0927, 2000 WL 222852, at *1, 2000 U.S.Dist. LEXIS 1981, at *2 (5th Cir. Feb. 18, 2000). Denial of a motion to dismiss is appropriate, however, where (1) dismissal would preclude the court from deciding a pending case or claim-dispositive motion, or (2) there is an objectively reasonable basis for requesting that the merits of the action be resolved in the current forum to avoid legal prejudice. *See Radiant Technology Corp.,* 122 F.R.D. at 203. That is, outright dismissal should be refused when a plaintiff seeks to circumvent an expected adverse result. *Id.* In any case, voluntary dismissal under Rule 41(a)(2) remains a matter within the sound discretion of the district court, and the district court's decision on this issue is reviewed only for abuse of discretion. *See Templeton,* 901 F.2d at 1274–75.

■ When analyzing a motion to dismiss under Rule 41(a)(2), a district court should consider when in the course of litigation the plaintiff files such a motion. *See Reed,* 2000 WL 222852, at *1, 2000 U.S.Dist. LEXIS 1981, at *3. There is no single formula for balancing a court's discretion on a Rule 41(a)(2) determination. However, the district court may consider whether the suit is still in the pre-

trial stages (*see Templeton,* 901 F.2d at 1275–76); whether the parties have riled numerous pleadings and memoranda, have attended conferences, and whether prior court determinations were adverse to the plaintiff (*see Davis v. Huskipower Equipment Corp.,* 936 F.2d 193, 199 (5th Cir. 1991)); or whether hearings have been held, whether any defendants have been dismissed on summary judgment, and whether the parties have undertaken significant discovery (*see Hartford Accident & Indemnity Co. v. Coasta Lines Cargo Servs., Inc.,* 903 F.2d 352, 360 (5th Cir. 1990)).

### B. Analysis.

Oxford and Johnson observe that their lawsuit is not cost-effective since this court denied class action certification. They further contend that because the "bases for the dismissal request are purely practical considerations, and are unrelated to the merits of plaintiffs' claims," dismissal should therefore be without prejudice. Presumably, a dismissal without prejudice would permit them to fight another day, in this court or another. In any event, plaintiffs have argued the merit of their claims at length. Because they have done so, the defendants have had ample opportunity to prove the merits of their defenses and the basis of their motion for summary judgment.

■ The plaintiffs correctly point out that such a motion should not be denied simply because they might refile their lawsuit at a later date in this or another forum or might enjoy some other tactical advantage. *See Reed,* 2000 WL 222852, at *1, 2000 U.S.Dist. LEXIS 1981, at *2. Nonetheless, on review of the record on the light of past Fifth Circuit analysis and rulings, this court is convinced that the plaintiffs here have *no serious grounds for* dismissal sufficient to outweigh the defendants' firmly-grounded merits on summary judgment.

Although this suit is technically in the pretrial stage, it was originally filed in September 1999. Thus, the case has been in some stage of preparation for about twenty-one months. Defendants have assiduously moved forward with their trial preparations, evidenced by their compilation of data and arguments supporting their motion for summary judgment. While additional preparations and discovery would be required before proceeding to trial, the defendants have spent significant time, money an effort in preparing their case. To dismiss the case now would prejudice the defendants' preparations in light of their dispositive motion. *See Radiant Technology Corp.,* 122 F.R.D. at 203. This alone warrants denial of the Rule 41(a)(2) motion.

Additionally, to date, there have been fourteen motions filed, by all parties, ranging from simple and unopposed requests for extension of time to file a response, to the more complex motions to remand and to dismiss on summary judgment. Each of those generated one or more memoranda filed in response or in reply. All this represents a large investment of research and cost.

Whether the parties have conducted any conferences outside of court is unclear. There has been only one hearing. The parties have corresponded on numerous occasions.

There are prior court determinations which were adverse to the plaintiffs. This court has previously denied the plaintiffs' motion to remand. Further, two defendants named by the plaintiffs were found to have been fraudulently joined and therefore were dismissed. Additionally, the Fifth Circuit Court of Appeals denied plaintiffs' petition for leave to appeal this

court's denial of class certification under FED.R.CIV.P. 23(f). *See Oxford v. Williams Companies,* Order No. 01–4 (5th Cir. Mar. 28, 2001). Finally, this court finds merit in the defendants' pending motion for summary judgment, whereas plaintiffs' arguments are insufficient to show a material issue of fact.

Although no defendants have yet been dismissed on summary judgment, original defendants Transcontinental Gas Pipe Line Company (Transco) and Williams Communications Solutions L.L.C. (Solutions), as just noticed, were dismissed under Rule 12(b)(6).

The time and cost associated with conducting significant discovery weighs heavily in determining prejudice to a defendant. The plaintiffs state that "[n]o discovery has been taken." It would be truer to say that the plaintiffs have apparently refused to cooperate in conducting discovery, to the extent of providing pertinent information regarding the properties involved. Instead, the defendants have undergone the time, effort, and expense of the independent research already described. It was only after the defendants produced all this material for the court that the plaintiffs finally produced the information presented in their statement in opposition to summary judgment and their Rule 41(a)(2) motion.[1] Defendants have also produced their initial disclosures, while the plaintiffs have not complied with this court's order to do so. Therefore, while formal discovery may not have progressed very far in the taking of depositions and the like, the defendants have shouldered a significant burden in uncovering the facts underlying the plaintiffs' claims.

In a related vein, the plaintiffs have seemingly engaged in a game of "show me yours and I'll show you mine," and avoided prosecution of their case while faced with the defendants' removal to federal court, their pressing demands for discovery, and this court's *sua sponte* denial of class certification. That conduct might have continued but for the defendants' summary judgment motion forcing the plaintiffs' response. This court will not reward a plaintiff's dilatory motives.

On balance, the plaintiffs' Rule 41(a)(2) motion will be denied because the defendants are entitled to having their dispositive summary judgment motion determined first. There is insufficient merit in the plaintiffs' motion to justify granting it in these circumstances.

◼ Even if the defendants had made no summary judgment motion, under the balance of this analysis, this court could dismiss the plaintiffs' suit only with heavy conditions to prevent prejudice to the defendants. The court could retain jurisdiction over these plaintiffs and this subject matter in any future filings on diversity and also on federal question grounds. *See* Memorandum Opinion on plaintiff's motion to remand, *citing Drawhorn v. Qwest,* 121 F.Supp.2d 554 (E.D.Tex.2000).

Further, because the plaintiffs refused to comply with a discovery order regarding initial disclosures issued by this court, the court would condition a dismissal, had it been granted, on a prohibition against ever using the information required in an initial disclosure by FED.R.CIV.P. 26(a) in any refiling. *See* FED.R.CIV.P. 37(c)(1).

---

**1.** Plaintiffs claim that their "counsel did not realize that Williams was apparently unaware of the existence of the Oxford property at issue, until counsel received Williams' motion for summary judgment and supporting materials." *See Plaintiffs' motion to dismiss,* n. 1.

Given the uncontroverted evidence presented by the defendants that they requested, in writing, an identification of each allegedly burdened property, and received no responsive reply, this statement could be regarded as disingenuous at the very least.

Finally, the court would condition dismissal, had it been granted, on the plaintiffs' payment of the defendants' attorney's fees and costs. *See Radiant Technology Corp.*, 122 F.R.D. at 205; *American Telnet, Inc. v. GTE Corp.*, No. Civ. A. 3:99CV0280D, 1999 WL 362759 (N.D.Tex. June 3, 1999).

The Rule 41(a)(2) motion is denied.

## IV. Conclusion.

For the reasons stated herein, it is, therefore,

ORDERED that defendants Williams Companies and WorldCom Companies' motions for summary judgment are hereby GRANTED. It is further,

ORDERED that the plaintiffs' motion to dismiss without prejudice under Rule 41(a)(2) is hereby DENIED.